COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Frank and Kelsey
Argued at Salem, Virginia

BRIAN ALDEN KENNEMORE

                                                    OPINION BY
v.        Record No. 1442-06-3        JUDGE D. ARTHUR KELSEY
                                                    DECEMBER 11, 2007

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Charles J. Strauss, Judge

J. Patterson Rogers, 3rd, for appellant.

Robert H. Anderson, III, Senior Assistant Attorney
General (Robert F. McDonnell, Attorney General, on
brief), for appellee.


A jury convicted Brian Alden Kennemore of various violent crimes, including murder

during the commission of arson.  On appeal, Kennemore claims his felony murder conviction

should be overturned because the trial court improperly instructed the jury about the necessary

causal relationship between the arson and the victim's death.  We find no error in the trial court's

ruling and affirm Kennemore's conviction.

I.

At 1:00 a.m. one night in 2005, Kennemore and a friend arrived at the home of Mark

Alger and Jennifer Popa.  After the four drank alcohol and used cocaine for about two hours,

Kennemore and his friend left.  At 7:00 a.m., Alger went to work.  He returned that evening to

find Popa dead in their bedroom.  Her hands had been tied behind her back, and a cloth was tied

around her head covering her mouth and nose.  The lower half of her body was unclothed.  A

steak knife lay next to her head on the floor.  Wrapped in a sheet and blanket, Popa had been set

on fire.  After burning Popa and melting the television and the mini-blinds, the fire extinguished

itself by consuming all of the oxygen in the home. Responding firefighters detected lingering gasoline fumes which had previously fueled the fire.

DNA testing identified Kennemore as the likely perpetrator. Samples of his DNA were found on an abrasion on the victim, on the handle of the steak knife, on the cloth tied around the victim's mouth and nose, and on the victim's shirt. The odds of it being someone else's DNA on the victim's abrasion were 1 in 6 billion. Police arrested Kennemore and charged him with multiple felonies,[1] including arson and felony murder related to the arson.

At trial, the coroner who performed the autopsy testified that Popa died by asphyxiation. She had been smothered to death by the cloth tied around her mouth and nose. The coroner believed Popa was dead by the time the "sooty fire was taking place." The forensic evidence, however, left open the possibility that Popa was alive when the initial "flash fire" occurred. The "flash fire," the coroner explained, could have quickly consumed much of the oxygen in the room and accelerated Popa's death by asphyxia.

Kennemore did not testify. At the close of the evidence, Kennemore's counsel made a motion to strike on various grounds, including the sufficiency of the evidence offered in support of the felony-murder charge predicated on arson. Noting the coroner's testimony about the effect of a "flash fire," the trial court denied the motion to strike this charge.

During the jury's deliberations, the foreman submitted a written question to the trial court: "Referring to the charge of murder in the commission of arson, must the victim be alive at the time the fire is set or can they [sic] be already dead for the defendant to be guilty of this

---

[1] The indictments charged Kennemore with breaking and entering with the intent to commit murder, rape, robbery, or arson (Code § 18.2-90); abduction with intent to defile (Code § 18.2-48); premeditated murder (Code § 18.2-32); felony murder during the commission or attempted commission of arson (Code § 18.2-32); felony murder during the commission or attempted commission of an abduction (Code § 18.2-32); felony murder during the commission or attempted commission of burglary (Code § 18.2-32); and arson of an occupied dwelling (Code § 18.2-77).

charge?" The trial court presented the question to the prosecutor and Kennemore's counsel. The court suggested answering the question this way: "In the commission of arson as used in these instructions means a killing before, during or after arson or attempted arson where the killing is so closely related to the arson in time, place, and causal connection as to make it part of the same criminal enterprise." Kennemore's counsel objected, stating:

> *The evidence in this case indicates that the deceased was either already dead at the time that the arson was committed* and that the arson was committed for the purpose of hiding her death or concealing the manner of her death, *or as the medical examiner testified, there is a possibility that it in fact was a contributor or the sole cause of her death from what was termed oxygen deprivation in a flash fire. Because th*e *jury must decide between those two alternative fact situations in determining whether or not the arson was the cause of her death*, it is our position that the jury instruction unfairly could confuse the jury to believe that if the death were, occurred prior to the time of the arson separate, that it would permit them to find a verdict of guilty in this matter.

J.A. at 206-07 (emphasis added). Kennemore's counsel went on to argue that the confusing nature of the proposed instruction could be remedied:

> It's our position, and we suggest to the Court that the statute and the case law which the Court has referred to means that the death has to be in some way connected with the arson and that would be for example if someone were killed in order to facilitate an arson, if someone intended to permit, to commit arson and then killed someone in order to be able to commit the crime of arson, that would be murder before but would still be within the arson. We don't believe that the evidence in this case does fit that and we suggest to the Court that that is the only scenario in which that could apply. . . .

Id. at 207.

In short, Kennemore's objection conceded the evidence would permit a rational jury to conclude that the flash fire contributed to Popa's death. The specific objection was simply that such a contributing cause of death was not sufficiently "connected with the arson" in the same way that a killing "in order to facilitate an arson" would be.

- 3 -

The trial court rejected Kennemore's objection and answered the jury's question with the proposed instruction. The jury later returned guilty verdicts on various indictments, including the charge of felony murder during the commission or attempted commission of arson.

## II.

On appeal, Kennemore claims the trial court's instruction was "partially correct" but nonetheless "incomplete" because "it left out cause." Appellant's Br. at 13.[2] The prosecution, Kennemore argues, had to prove that Popa's murder "occurred *while the appellant was engaged in* the arson." Id. at 14 (emphasis in original). Kennemore interprets the question submitted by the jury to be an implied finding of fact that Popa's death wholly preceded the arson or attempted arson, thus making it all the more important that the trial court's instruction set out the causation test with analytical care. After surveying the *res gestae* precedents governing felony murder, Kennemore concludes the trial court's instruction provided too little guidance on the required causal nexus and thereby confused the jury. We disagree.

(a) JURY QUESTIONS & FINDINGS OF FACT

Kennemore's argument starts with the assumption that the jury's question represents an implicit finding that Popa had died prior to the commission or attempted commission of arson. We do not read it that way.[3] But, even if we did, we still would not characterize it as some sort

---

[2] We previously rejected the portion of Kennemore's petition for appeal challenging the trial court's denial of his motion to strike the felony-murder charge predicated on arson. On this issue, the petition provided "no argument or supporting legal authority" and consequently failed to warrant further appellate review. See Per Curiam Order at 8 (Jan. 19, 2007). At oral argument before us, Kennemore's counsel conceded that a reasonable jury could have concluded from the evidence that the flash fire contributed in part to Popa's death. We thus do not address the sufficiency of the evidence supporting the felony-murder charge predicated on arson.

[3] The jury's question appears to us as nothing more than what it purports to be — an inquiry asking whether there needs to be a causal connection linking the killing to the arson. Nothing in the text of the question or, for that matter, the context in which it was raised, implies

of finding of fact by the jury.  A jury speaks only through its unanimous verdict.  "The verdict, as finally agreed upon and pronounced in court by the jurors, must be taken as the sole embodiment of the jury's act."  United States v. Espinoza, 338 F.3d 1140, 1148 (10th Cir. 2003) (citation omitted).  We infer from a jury verdict only those factual findings which, by logical necessity, must have been made for the jury to reach the conclusion it did.  See Jones v. Commonwealth, 217 Va. 231, 233, 228 S.E.2d 127, 128-29 (1976) (attributing to the jury only those findings of fact "necessarily" subsumed in the verdict).

In Virginia, as elsewhere, the deliberations of jurors "during retirement, their expressions, arguments, motives, and beliefs, represent that state of mind which must precede every legal act and *is in itself of no jural consequence*."  8 Wigmore, Evidence § 2348, at 680 (McNaughton rev. 1961) (emphasis added).  A question posed to the court during deliberations, after all, could suggest as little as the tentative views of a single juror.  It cannot be extrapolated into a binding factual finding by the jury as a whole.  Espinoza, 338 F.3d at 1148 (applying the Wigmore principle and refusing "to consider the jury's note to the trial judge as evidence of how the jury arrived at its verdict" because the "jury speaks through its verdict").

(b)  THE TRIAL COURT'S *RES GESTAE* INSTRUCTION

No matter how one interprets the jury's question, Kennemore argues, the trial court's instruction — taken directly from Haskell v. Commonwealth, 218 Va. 1033, 243 S.E.2d 477 (1978) — was nonetheless an incomplete and confusing summary of the *res gestae* doctrine.  We again disagree.

The felony-murder doctrine "originated at common law," Commonwealth v. Montague, 260 Va. 697, 700, 536 S.E.2d 910, 912 (2000), with antecedents recognized as long ago as

a discrete factual finding on the precise moment of Popa's death or its causal relationship to the initial "flash fire."

Blackstone, 4 <u>Commentaries on the Laws of England</u> 200-01 (1769), and Lord Coke, 3 <u>Institutes of the Law of England</u> 56 (1797). Under common law, a defendant's "commission of a felony of violence manifests a person-endangering frame of mind such that malice may be imputed to the act of killing." <u>Cotton v. Commonwealth</u>, 35 Va. App. 511, 515, 546 S.E.2d 241, 243 (2001) (quoting John L. Costello, <u>Virginia Criminal Law and Procedure</u> § 3.4-3, at 33 (2d ed. 1995) (footnote omitted)). When the killing takes place during the commission of arson, Code § 18.2-32 punishes the killing as first-degree murder. Code § 18.2-32 applies both to "unintentional" and intentional killings. <u>Ball v. Commonwealth</u>, 221 Va. 754, 757, 273 S.E.2d 790, 792 (1981).

Inherent in the felony-murder doctrine is the *res gestae* limitation. It focuses on whether the killing and the felony were "closely related in time, place, and causal connection" to permit the conclusion that there "was a continuity of evil action." <u>Haskell</u>, 218 Va. at 1043, 243 S.E.2d at 483 (finding *res gestae* satisfied where the defendant killed a victim of an attempted robbery in an effort to protect the defendant's way of escape); <u>see</u> <u>also</u> <u>Pope v. Netherland</u>, 113 F.3d 1364, 1369 (4th Cir. 1997) (applying <u>Haskell's</u> restatement of *res gestae* doctrine).

"The rule which we adopt," the Virginia Supreme Court has declared, "is that the felony-murder statute applies where the killing is so closely related to the felony in time, place, and causal connection as to make it a part of the same criminal enterprise." <u>Haskell</u>, 218 Va. at 1043-44, 243 S.E.2d at 483 (refusing to limit *res gestae* to the elements of the felony); <u>see</u> <u>also</u> <u>Montague</u>, 260 Va. at 701, 536 S.E.2d at 913; <u>see generally</u> Ronald J. Bacigal, <u>Criminal Offenses and Defenses</u> 338 (2007). If the felony and the killing are "inextricably interwoven" in this way, they conjoin for purposes of the *res gestae* doctrine. <u>Haskell</u>, 218 Va. at 1043, 243 S.E.2d at 483.

Within the *res gestae* "continuity of evil action," <u>id.</u>, it does not matter whether the killing precedes the felony or follows it. <u>See id.</u> at 1041, 243 S.E.2d at 482 (discussing, with

approval, the general rule that "a killing within the *res gestae* of the felony is felony-murder, whether the killing occurs before or after the felony"). If the events are sufficiently related, the killing can take place "before, during, or after" the felony. Hoke v. Netherland, 92 F.3d 1350, 1363 (4th Cir. 1996) (citation omitted); see Harward v. Commonwealth, 229 Va. 363, 366, 330 S.E.2d 89, 91 (1985) (noting that the statutory phrase "in the commission of" includes a killing "*before, during, and after* the underlying felony" (emphasis in original)).[4] Thus, under the prevailing view, the *res gestae* doctrine

> embraces not only the actual facts of the transaction and the circumstances surrounding it, but the matters immediately antecedent to and having a direct causal connection with it, as well as acts immediately following it and so closely connected with it as to form in reality a part of the occurrence.

Rollin M. Perkins, Criminal Law 42-43 (2d ed. 1969) (citation omitted).

Here, the trial court's instruction fairly restated the governing principles of the *res gestae* limitation on the felony-murder doctrine. The instruction explained that the killing could take place "before, during or after" the arson if the killing was "so closely related to the arson in time, place, and causal connection as to make it a part of the same criminal enterprise." It was unnecessary for the trial court to give a more elaborate restatement of the *res gestae* conceptual boundaries. We find nothing in the brevity or clarity of the instruction to suggest, as Kennemore does, that the jury could find him guilty without *any* showing of causal connection between the

---

[4] See, e.g., George v. Commonwealth, 242 Va. 264, 277-78, 411 S.E.2d 12, 20 (1991) ("Murder in the commission of robbery is a killing which takes place before, during, or after the robbery and is so closely related thereto in time, place, and causal connection as to make the killing part of the same criminal enterprise as the robbery."); Whitley v. Commonwealth, 223 Va. 66, 73, 286 S.E.2d 162, 166 (1982) (applying principle where the killing preceded the felony, permitting the inference that the latter motivated the former); Bassett v. Commonwealth, 222 Va. 844, 855-56, 284 S.E.2d 844, 851-52 (1981) ("In a robbery prosecution, where the violence against the victim and the trespass to his property combine in a continuing, unbroken sequence of events, the robbery itself continues as well for the same period of time. . . . [W]e hold that the killing involved here was so closely related in time, place and causal connection to make the killing, as a matter of law, a part of the same criminal enterprise." (citation omitted)).

killing and the arson or attempted arson. Nor do we think the instruction somehow misled the jury by giving them an incomplete explanation of their factfinding task.

Our task on appeal is to "ensure that the law has been 'clearly stated' and that the 'instructions cover all issues' fairly raised by the evidence." Mouberry v. Commonwealth, 39 Va. App. 576, 581-82, 575 S.E.2d 567, 569 (2003) (citation omitted). No instruction "should be given that 'incorrectly states the applicable law or which would be confusing or misleading to the jury.'" Id. (quoting Bruce v. Commonwealth, 9 Va. App. 298, 300, 387 S.E.2d 279, 280 (1990)). "The purpose of any jury instruction is to inform the jury of the law guiding their deliberations and verdict." Morgan v. Commonwealth, 50 Va. App. 120, 132, 646 S.E.2d 899, 905 (2007) (citation omitted).

It is true brevity can sometimes mask incomplete thinking. But it is more often true that verbosity parades confused thinking. Instructions to juries, therefore, should be succinct and clear — leaving nothing unsaid which needs to be said, while saying no more than necessary.[5] We rely heavily on the instincts of trial judges on where to draw that line. As the United States Supreme Court has explained:

> Once the judge has made an accurate and correct charge, the extent of its amplification must rest largely in his discretion. The trial judge, in the light of the whole trial and with the jury before him, may feel that to repeat the same words would make them no more clear, and to indulge in variations of statement might well confuse. How far any charge on technical questions of law is really understood by those of lay background would be difficult to

---

[5] See Williams v. Blue Bird Cab Co., 189 Va. 402, 407, 52 S.E.2d 868, 870 (1949) ("The object of instructions is to impartially inform the jury in clear, concise and succinct language of the principles and rules of law applicable to the case . . . ."); Gottlieb v. Commonwealth, 126 Va. 807, 813, 101 S.E. 872, 874 (1920) (advocating "simple, impartial, clear, concise statement of the law" instructions because "such instructions aid juries in reaching right conclusions, while many others which unfortunately have received judicial sanction are couched in technical language of doubtful meaning and with their obscurities, refinements, distinctions, contradictions, hypotheses and tergiversations serve only to confuse, mystify and mislead jurors, while they likewise furnish unnecessary and unprofitable exercise for the judges").

ascertain, but it is certainly more evident in the living scene than in a cold record.

United States v. Bayer, 331 U.S. 532, 536-37 (1947).

The trial court's *res gestae* instruction in this case compromised none of these principles. The instruction fairly addressed the causation nexus and did not understate the importance of this limitation of the *res gestae* doctrine. The trial court "was within its area of discretion in his brevity." See id. at 537. We thus reject Kennemore's challenge to the accuracy or completeness of the instruction.

III.

Finding no error in the *res gestae* instruction given by the trial court in response to the jury's question, we affirm Kirby's conviction for felony murder during the commission or attempted commission of arson.

Affirmed.