COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Beales and Powell
Argued at Alexandria, Virginia


STEVEN S. MARTIN
                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 2914-07-4                           JUDGE CLEO E. POWELL
                                                            AUGUST 25, 2009
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                            Robert W. Wooldridge, Jr., Judge
                               Dennis J. Smith, Judge

             Dawn M. Butorac, Deputy Public Defender (Office of the Public
             Defender, on briefs), for appellant.

             Susan M. Harris, Assistant Attorney General (William C. Mims,
             Attorney General, on brief), for appellee.


        Steven S. Martin, appellant, appeals his conviction for aggravated sexual battery, in

violation of Code § 18.2-67.3, and the revocation of his suspended sentence, pursuant to Code

§ 19.2-306, for a prior robbery conviction.  On appeal, appellant contends that the trial court

erred in (1) refusing to set aside the jury's verdict where appellant alleged that the evidence was

insufficient to support a conviction for aggravated sexual battery, (2) declining to dismiss the

charge against appellant with prejudice or strike the entirety of the complaining witness'

testimony in response to appellant's allegation that the Commonwealth violated the terms of the

discovery order and their obligations under Brady v. Maryland, 373 U.S. 83 (1963), (3) failing to

instruct the jury in appellant's desired manner when the jury asked questions during

deliberations, and (4) basing the revocation of appellant's suspended sentence for a prior

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

conviction, in part, on his new conviction for aggravated sexual battery. Finding no error, we affirm the trial court's judgments and affirm appellant's conviction.

As the parties are fully conversant with the record in this case, and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

## I. SUFFICIENCY OF THE EVIDENCE TO PROVE AGGRAVATED SEXUAL BATTERY

Appellant argues that the evidence was insufficient to support his conviction for aggravated sexual battery because the victim's testimony was inherently incredible.

> Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom. We should affirm the judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975) (citations omitted). "The jury's finding may only be disturbed on appeal if this Court finds that [the victim's] testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" Robertson v. Commonwealth, 12 Va. App. 854, 858, 406 S.E.2d 417, 419 (1991) (quoting Fisher v. Commonwealth, 228 Va. 296, 299-300, 321 S.E.2d 202, 204 (1984)); see Willis & Bell v. Commonwealth, 218 Va. 560, 563-64, 238 S.E.2d 811, 813 (1977).

Here, the evidence proved that in late May or early June of 2006, appellant moved in with G.W. (mother) and her children: C.W. (brother) who was three years old and T.W. (victim) who was eight years old. At that time, appellant had known mother for more than thirty years. When he lived with mother and her children, he took on the role of a father figure. He quit his job and cared for brother full time and victim when she came home from school. He helped victim with her homework if she needed him or disciplined her when required.

- 2 -

On January 17, 2007, mother learned of allegations that appellant had sexually abused her daughter. In response to her daughter's allegations, mother brought victim to the hospital to be examined by a sexual assault nurse examiner (SANE). During this examination, the nurse found redness in victim's vaginal area and labia minora. This redness is not typical of someone at victim's stage of physical development. This redness may indicate injury, though the SANE could not say this definitively. On cross-examination, the SANE testified that the redness she observed was too localized to have been caused by infection or poor hygiene. She also told the jury that victim had no history of acute or chronic medical conditions that would explain the redness. While at the hospital, victim also spoke with Theresa Brown, a member of the child protective services division of the Department of Family Services, and Detective Christian, of the Fairfax County Police Department.

At trial, victim testified that appellant touched her inappropriately five times. Victim said that she was watching television in her bedroom when the first "bad" incident happened. She said that appellant entered her room and touched her "p-u-s-s-y" on top of her jeans.[1] When asked to identify the area of her body where appellant touched her, victim pointed to her lower groin area. Despite that she told him to stop, victim said that appellant did not stop until he was done. During the second incident, victim said that appellant touched her lower groin area under her jeans. She testified that appellant stopped when she told him to.

On cross-examination, victim stated that she told police that appellant touched her five times. She also stated that she told the Commonwealth's attorney that appellant showed her his "d-i-c-k" while she was watching television in her bedroom.[2] Later during cross-examination, victim corrected herself and said that she was watching television in her mother's room when

---

[1] Victim repeatedly spelled rather than said this word.

[2] Victim again spelled, rather than said, this word.

appellant showed her his penis. Victim said that she also told this information to her mother, Brown, and Christian. She then testified that appellant showed her his penis the first time that he touched her. She said that he touched her with four fingers and that the touching lasted seconds. Victim told the jury that she was watching television in her bedroom the second time that appellant touched her. Victim testified that the third time appellant touched her she was also watching television in her room. This time he touched her over top of her panties with one finger and without any movement. Victim said that appellant touched her with his whole hand on the fourth time that he touched her. This incident was on top of her jeans again and lasted for five seconds. Victim testified that these four incidents happened shortly after appellant moved in with her, her mother, and her brother. Still during cross-examination, victim described the fifth incident. She said that she was sitting on her mother's bed watching television when appellant approached her and put his hand inside her pants. When she told him to stop, he did.

Mother also testified as part of the Commonwealth's case-in-chief. She said that while riding home from work on January 17 with her children, appellant, and appellant's friend, she heard her son trying to say something but noticed that victim repeatedly covered his mouth. When she asked her son what he was trying to say, he said, "[Victim] is having sex with [appellant]."[3] Upon hearing this statement, victim's eyes began to water. Mother became angry and began "cussing" at appellant, who remained calm and explained that brother said this because he had heard a song. On cross-examination, mother stated that appellant watched her children while she was at work and that he would have to discipline victim on occasion. Mother admitted that she and appellant fought in front of the children and that sometimes she cried because of these fights. She said she yelled at appellant for drinking too much. She said that

---

[3] This statement was not admitted for the truth of the matter asserted.

after these fights, she would try to calm victim down and let her know that everything was all right between her and appellant.

During the appellant's case-in-chief, Brown, the child protective services worker, told the court that victim alleged that appellant touched her three times – twice in May 2006 and once on January 16, 2007. She said that victim recalled the time of the first two incidents because they happened shortly after appellant moved in with her family. According to Brown, victim told her that during the first incident, appellant fondled victim above her underwear.[4] Brown said that victim told her that appellant digitally penetrated her beneath her underwear during the second incident. Victim told Brown that during the third incident appellant attempted to put his penis inside her vagina while she watched television in her mother's room. Brown testified that victim said that appellant entered her mother's bedroom with his penis in his hand. He approached her, unzipped and pulled down her pants, climbed on top of her, and tried to penetrate her. Victim said that his penis touched the skin of her vagina. She said that she kicked appellant off onto the floor and told him to stop.

Appellant next called Detective Christian who testified that victim said that appellant touched her five times on three separate days. Detective Christian testified that it was not always clear from victim which touching occurred on which day.

One of appellant's sisters, Frances Turner, testified on his behalf. She told the jury that mother gave her permission to talk with victim the day after victim made allegations that appellant molested her. Turner asked victim whether appellant had hurt victim in any way, and victim said no. Mother denied both giving permission for and the occurrence of this conversation.

---

[4] Brown said victim used the word "vagina" to describe where she was touched and knew anatomically correct drawings.

In support of his argument that the evidence is insufficient to support his conviction because victim was inherently incredible as her testimony "was riddled with inconsistencies and unworthy of belief," appellant relies on an unpublished case from this Court, Dailey v. Commonwealth, Record No. 0940-85 (Va. Ct. App. Sept. 11, 1987).[5] The Commonwealth, relying on Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008), contends that any inconsistencies in victim's testimony when viewed in the light most favorable to the Commonwealth do not preclude "any rational trier of fact [from finding] the essential elements of the offense beyond a reasonable doubt." Appellant responds that the Commonwealth incorrectly relies on victim's preliminary hearing testimony in arguing that the evidence is sufficient. Appellant also attacks the Commonwealth's assertion that the jury could have concluded that children of victim's age or cognitive development level describe time in terms of place and context because the jury had no evidence of victim's cognitive development level or

---

[5] Initially, it must be noted that the holding in Dailey v. Commonwealth, Record No. 0940-85 (Va. Ct. App. Sept. 11, 1987), is not binding on this Court, pursuant to Code § 17.1-413. To the extent that it could be persuasive, appellant's reliance on Dailey is misplaced as it is easily distinguishable from the facts in appellant's case. In Dailey, this Court found the complaining witness to be inherently incredible based on the complaining witness' very poor reputation for truthfulness and the accused's excellent reputation for truthfulness, the unexplained delay in reporting, the multiple stories told, the lack of physical evidence to corroborate the complaining witness' story, and the expert witness' testimony that chronic lying is a characteristic of a disease from which the complaining witness suffered. Id. at 4. Here, victim delayed reporting incidents that are alleged to have occurred in May 2006, but she reported the January 2007 incident one day after it happened. Thus, as to at least one incident, there was no delay in reporting. Victim explained the other delay as resulting out of fear. The complaining witness' story in Dailey was unsupported by physical evidence, but the SANE's examination supports victim's version of the January 2007 incident. Moreover, in Dailey, the record is replete with evidence that the complaining witness was a chronic liar and was repeatedly in trouble with the law. Id. at 2. Indeed, his own stepmother testified that he told her he fabricated the allegations against Dailey but could not change his story now without getting himself in trouble. Id. at 3. Here, nothing in the record indicates that victim had a reputation for lying. Thus, the Dailey case is not similar to the case on appeal here and does not support appellant's contention that victim's allegations are inherently incredible or without evidence to support them.

that of other children before it.  Finally, appellant argues that the jury clearly reached an inconsistent verdict in convicting appellant of one count but not the other.

Here, the record provides sufficient evidence from which the fact finder could determine beyond a reasonable doubt that appellant committed aggravated sexual battery on one occasion between May 2006 and January 2007.  Victim testified to numerous touchings.  Though appellant attempted to impeach her on the details of the events, nothing in the record indicates that victim's testimony is "'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'"  Robertson, 12 Va. App. at 858, 406 S.E.2d at 419 (quoting Fisher, 228 Va. at 299-300, 321 S.E.2d at 204).

Appellant further asserts that the jury's verdict is without evidence to support it because it is inconsistent; he contends that the jury should have accepted all of victim's testimony and convicted appellant of two counts of aggravated sexual battery or rejected all of victim's testimony and acquitted him of both counts.  However, any supposed inconsistency in the jury's verdict does not render the single conviction of appellant unsupported by evidence because a rational fact finder could review the evidence and find appellant guilty of just one incident of aggravated sexual battery.

> When weighing the evidence, the fact finder is not required to accept entirely either the Commonwealth's or the defendant's account of the facts.  Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986).  Similarly, the fact finder is not required to believe all aspects of a defendant's statement or testimony; the judge or jury may reject that which it finds implausible, but accept other parts which it finds to be believable.  Durham v. Commonwealth, 214 Va. 166, 169, 198 S.E.2d 603, 606 (1973).  Thus, the jury was entitled to accept only those parts of [witnesses'] version[s] . . . which they found to be plausible and credible.

Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993).

Even if the jury's verdict was inconsistent, it is not in error. "In Virginia, it is permissible for juries to reach inconsistent verdicts." Ludwig v. Commonwealth, 52 Va. App. 1, 12, 660 S.E.2d 679, 684 (2008) (citing Gaines v. Commonwealth, 39 Va. App. 562, 570, 574 S.E.2d 775, 779 (2003) (en banc)). "[J]uries may reach inconsistent verdicts through mistake, compromise, or lenity, but in such instances it is 'unclear whose ox has been gored,' the government's or the defendant's." Wolfe v. Commonwealth, 6 Va. App. 640, 648, 371 S.E.2d 314, 318 (1988) (quoting United States v. Powell, 469 U.S. 57, 65 (1984)). Whether the victim alleged that appellant touched her five times or three times is irrelevant if the jury, as a rational fact finder, could find, as it did here, that appellant touched victim illegally once during the alleged time period. Thus, appellant's argument is without merit.

## II.  ALLEGED BRADY VIOLATION

During direct examination of the Detective Christian, who appellant called as part of his case-in-chief, appellant objected and argued that the Commonwealth had violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose all details from Detective Christian's notes despite multiple discovery orders. Appellant initially asked for dismissal with prejudice. In the alternative, appellant asked that the entirety of victim's testimony be struck because appellant was unable to fully cross-examine her. In evaluating the matter, the court asked appellant what other relief he sought. Appellant then proposed that he be allowed to treat Detective Christian as an adverse witness, that he receive a copy of the detective's reports and notes, and that he be permitted to voir dire Detective Christian prior to calling her as a witness. The trial court granted appellant's third proposed remedy. Appellant declined the trial court's invitation to move for a mistrial.[6]

_____

[6] At oral argument, appellant argued that he did not seek a mistrial because he was incarcerated at the time of trial and did not wish to prolong his incarceration because of the Commonwealth's error. Appellant did not make this argument as to why a mistrial was not an

"There are three components of a true <u>Brady</u> violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [Commonwealth], either willfully or inadvertently; and prejudice must have ensued." <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999).

> Stated differently, "[t]he question is not whether the defendant would have more likely than not received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." <u>Kyles v. Whitley</u>, 514 U.S. 419, 434 (1995). "[A] constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." <u>United States v. Bagley</u>, 473 U.S. 667, 678 (1985).

<u>Workman v. Commonwealth</u>, 272 Va. 633, 645, 636 S.E.2d 368, 374-75 (2006).

An essential element in proving a <u>Brady</u> violation is that the appellant be prejudiced. Here, appellant received precisely the relief he sought, even if it was his third choice. It is illogical for appellant to argue that he was prejudiced by the trial court granting the relief he proposed. Virginia courts have consistently held that "'[a] party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory. Nor may a party invite error and then attempt to take advantage of the situation created by his own wrong.'" <u>Rowe v. Commonwealth</u>, 277 Va. 495, 502, 675 S.E.2d 161, 164 (2009). As appellant cannot be prejudiced by the trial court granting the relief he proposed, appellant has failed to prove an essential element in proving a <u>Brady</u> violation and, therefore, this Court need not consider whether the evidence was favorable to appellant or whether the evidence was impermissibly suppressed by the Commonwealth.

---

appropriate remedy at the trial court and, therefore, Rule 5A:18 precludes our consideration of this argument.

Throughout deliberations, the jury had several questions for the judge:

> Why are we deliberating on two counts?  Are they related to
> specific dates?  If not, what are they related to?

> \*      \*      \*      \*      \*      \*      \*

> What differentiates Counts I and II?  Are there specific differences
> or time lines associated with each count?  Can the defendant be
> convicted on just one count?

> \*      \*      \*      \*      \*      \*      \*

> Does finding the Defendant guilty on Count II mean that he
> touched the child twice or that he touched her in 2007?  Or that the
> Defendant is guilty of touching her once in between May 2006 and
> January 16, 2007?

In response to the first question, the judge, Commonwealth, and appellant agreed that the jury should be instructed that, "The indictment issued in this case alleges that on two separate occasions between May 1, 2006 and January 16, 2007, Steven S. Martin committed an aggravated sexual battery on [victim]."  As to question two, all agreed to instruct the jury that the Commonwealth is alleging that touchings happened on two different days and that appellant could be convicted of just one count.  In response to the third question, the trial court, despite an objection by appellant, instructed the jury that

> The only difference between Count 1 and Count 2 is the date of the
> alleged offense.  Each count alleges an unlawful touching of
> [victim] by Steven Martin (as further detailed in the instructions)
> between May 2006 and January 2007.  If you find beyond a
> reasonable doubt that such a touching occurred on only one
> occasion, you shall find him guilty.  If you find beyond a
> reasonable doubt that such a touching occurred on two separate
> occasions, you shall find him guilty on two counts.  If you find that
> the Commonwealth failed to prove such a touching on any
> occasion, you shall find him not guilty.  You shall be guided by all
> instructions given to you.

Appellant argues that his due process rights were violated because the trial court failed to properly answer questions posed by the jury. Specifically, appellant argues that the jury's questions indicated that it was considering impeachment evidence for the truth of the matter asserted and, therefore, needed to be re-instructed that there was no substantive evidence before them of a touching in 2007.

It is axiomatic that "a trial court must give a direct and correct response to an inquiry by the jury and its failure to do so is ground for reversal." Shepperson v. Commonwealth, 19 Va. App. 586, 591, 454 S.E.2d 5, 8 (1995) (citing Wren v. Commonwealth, 66 Va. 989, 992 (1875)). That said,

> [a] trial judge does not abuse his discretion by failing to modify a correct statement of the law on the mere chance that a jury may not follow clearly written instructions. We presume the jury will understand, Rinehart & Dennis Co. v. Brown, 137 Va. 670, 680, 120 S.E. 269, 272 (1923), and will follow their instructions, LeVasseur v. Commonwealth, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983).

Gaines, 39 Va. App. at 567, 574 S.E.2d at 777.

Appellant relies on Hall v. Commonwealth, 233 Va. 369, 355 S.E.2d 591 (1987), to support his argument that the trial court erred in not cautioning the jury not to rely on impeachment evidence for its truth in response to a jury question about why appellant was charged with two counts. This reliance is misplaced. In Hall, the defendant sought a specific instruction that the jurors not consider impeachment evidence for its truth. Id. at 373, 355 S.E.2d at 594. The trial court denied this request stating that to so instruct would be an improper comment on evidence and the jury was adequately instructed with the general instruction on credibility. Id. at 373-74, 355 S.E.2d at 594. The Supreme Court of Virginia reversed and held that a defendant is entitled to such an instruction when requested. Id. at 374, 355 S.E.2d at 595.

Here, appellant requested *and received* this instruction as part of the jury instructions.[7]  What

appellant challenges on appeal is the trial court's refusal to re-instruct the jury on how to

consider specific evidence that appellant asserts is impeachment evidence.

Appellant contends that the jury's second and third questions indicated that the jury did

not understand the instruction they received indicating that they are not to consider impeachment

evidence for the truth of the matter asserted therein.  This assertion is not supported by evidence.

> In Virginia, as elsewhere, the deliberations of jurors "during
> retirement, their expressions, arguments, motives, and beliefs,
> represent that state of mind which must precede every legal act and
> *is in itself of no jural consequence.*"  8 Wigmore, Evidence § 2348,
> at 680 (McNaughton rev. 1961) (emphasis added).  A question
> posed to the court during deliberations, after all, could suggest as
> little as the tentative views of a single juror.

Kennemore v. Commonwealth, 50 Va. App. 703, 709, 653 S.E.2d 606, 609 (2007).  It cannot be

said based on the evidence in the record that the jury did not understand the instruction that

impeachment evidence is not to be considered for the truth of the matter asserted therein.

> "Once the judge has made an accurate and correct charge,
> the extent of its amplification must rest largely in his discretion.
> The trial judge, in the light of the whole trial and with the jury
> before him, may feel that to repeat the same words would make
> them no more clear, and to indulge in variations of statement might
> well confuse.  How far any charge on technical questions of law is
> really understood by those of lay background would be difficult to
> ascertain, but it is certainly more evident in the living scene than in
> a cold record."

Id. at 712-13, 653 S.E.2d at 610-11 (quoting United States v. Bayer, 331 U.S. 532, 536-37

(1947)).  Here, the judge correctly instructed the jury about how to treat impeachment evidence

---

[7] The jury was instructed

> [i]f you believe from the evidence that a witness previously made a
> statement inconsistent with his or her testimony at this trial, the
> only purpose for which that statement may be considered by you is
> its bearing on the witness' credibility.  It is not evidence that what
> the witness previously said is true.

when he provided all the jury instructions. "'When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle.'" Gaines, 39 Va. App. at 568, 574 S.E.2d at 778 (quoting Stockton v. Commonwealth, 227 Va. 124, 145, 314 S.E.2d 371, 384 (1984)). Therefore, the trial court did not abuse its discretion in refusing to instruct the jury a second time about how to consider impeachment evidence.

### IV. PROBATION VIOLATION CONVICTION

Appellant was on probation for a 2002 conviction when convicted of aggravated sexual battery. In a subsequent probation violation hearing, the Commonwealth alleged that appellant violated the terms of his probation by being convicted of new crimes: DUI, unauthorized use, and aggravated sexual battery. Appellant admitted to all allegations against him except aggravated sexual battery. The court found that appellant was in violation of the terms of his probation because of the new convictions, including the aggravated sexual battery. The judge revoked the five years that appellant had remaining on his 2002 conviction and terminated his probation. There was sufficient cause upon which the trial court could find that appellant had violated the terms of his suspended sentence. Moreover, because we affirm, his conviction on appeal in this proceeding, there is no further need to consider this argument. Thus, the trial court did not err.

### V. CONCLUSION

For the foregoing reasons, we affirm appellant's conviction for aggravated sexual battery and his sentence for violating the terms of his probation.

Affirmed.