UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Chafin and O'Brien
Argued at Fredericksburg, Virginia

JUAN AMARNDO CANDELARIA

MEMORANDUM OPINION* BY
v.      Record No. 0470-17-4          JUDGE TERESA M. CHAFIN
MAY 15, 2018

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Victoria A.B. Willis, Judge

Brian Carrico, Assistant Public Defender, for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
Herring, Attorney General; Stephen L. Forster, Assistant Attorney
General, on brief), for appellee.


Following a jury trial, the Circuit Court of Stafford County convicted Juan Amarndo

Candelaria of arson of personal property, in violation of Code § 18.2-81, and conspiracy to

commit arson, in violation of Code § 18.2-22.  On appeal, Candelaria contends the circuit court

erred by admitting certain hearsay statements into evidence.  Specifically, Candelaria argues the

circuit court improperly admitted:  1) a written statement from an eyewitness describing the

arson, and 2) out-of-court statements made by an alleged co-conspirator.  Upon review, we

conclude the admission of the statements at issue constituted, at most, harmless error.  Therefore,

we affirm Candelaria's convictions.

I.  BACKGROUND

"In accordance with established principles of appellate review, we state the facts in the

light most favorable to the Commonwealth, the prevailing party in the trial court[, and] accord

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the Commonwealth the benefit of all inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004). So viewed, the evidence is as follows.

Candelaria and Joseph Vaught were members of the United States Marine Corps stationed in Quantico, Virginia. Shortly after midnight on the morning of February 7, 2016, Vaught reported that his personal vehicle, an H3 Hummer, had been stolen. Police later found the vehicle burned beside of Raven Road in a secluded area of Stafford County. Vaught reported the theft to his insurance company, and he was eventually compensated for the value of the vehicle and other items destroyed by the fire. A fire marshal investigating the case later determined the fire was not accidental, and Candelaria and Vaught were charged with arson and related offenses after several months of further investigation.

Cameron Benson, a junior Marine one rank lower than Candelaria and Vaught, testified he unknowingly participated in the arson of Vaught's vehicle. Benson explained he rode with Candelaria and Vaught to Raven Road on the afternoon of February 6, 2016.[1] Later that evening, Candelaria asked Benson to give him a ride to a nearby restaurant. Benson agreed, and drove Candelaria to the restaurant in Candelaria's car. On the way to the restaurant, Candelaria told Benson he was going to burn Vaught's Hummer, but Benson thought he was joking.

When Benson and Candelaria arrived at the restaurant, Candelaria told Benson to meet him at Raven Road near a "clay building." He then left the restaurant driving Vaught's Hummer. At some point, Candelaria and Benson stopped their vehicles on the side of Raven Road. Benson explained Candelaria got out of Vaught's vehicle and took something out of the trunk of his own car. Benson then heard glass breaking and saw flames erupt from the Hummer.

---

[1] Although Benson initially testified he first went to the location where the arson occurred on February 5, 2016, he later clarified he went to the location for the first time on the afternoon of February 6, 2016.

- 2 -

After the fire started, Candelaria got into the car that Benson was driving and told him to drive to a nearby church. Vaught arrived at the church driving a van, and Benson saw Candelaria give him the key to the Hummer. Vaught offered Benson fifty dollars, but Benson refused to take the money.

Benson did not initially report the incident to the police or his commanding officers because of pressure from Candelaria and Vaught. Eventually, however, Benson gave a written statement describing the arson to the investigating fire marshal. On direct examination by the Commonwealth, Benson stated his trial testimony was consistent with the written statement he provided to the fire marshal. Benson also stated his testimony was consistent with his written statement when he was cross-examined by the Commonwealth after he was called as a witness by Candelaria.

During the cross-examination of Benson by the Commonwealth, the Commonwealth moved to admit Benson's written statement to the fire marshal into evidence. Candelaria objected to the admission of the written statement on hearsay grounds, noting the statement did not fall within the hearsay exception applicable to prior consistent statements of a witness. The circuit court overruled the objection and admitted Benson's written statement into evidence.

Other Marines testified at Candelaria's trial about the arson of Vaught's vehicle. Lance Corporal Kyriakos Savidis worked with Candelaria and Vaught at Quantico. Savidis testified Candelaria told him sometime before February 6, 2016 that "Vaught wanted to pay him to burn his Hummer." Like Benson, Savidis thought Candelaria was joking.

Savidis testified Candelaria approached him about Vaught's vehicle again on the morning of February 7, 2016. Savidis testified Candelaria told him "it's done," and clarified he was talking about "Vaught's Hummer." Savidis testified Candelaria explained he asked Benson for a ride to the restaurant where Vaught left his Hummer and the key to the vehicle. Candelaria then

told Savidis that he drove Vaught's vehicle to a location "where he burned it, torched it and then left."

Thomas Bonome also worked with Candelaria and Vaught at Quantico. Bonome testified Candelaria told him he burned Vaught's vehicle. Candelaria also told Bonome he "used gasoline to set the fire." Candelaria further explained "he cut the wires to the ignition to make it look like [the Hummer] was stolen and he smashed the window" of the vehicle.

Bonome also testified about a conversation he had with Vaught at some point after February 6, 2016 regarding the arson of the Hummer. Before Bonome testified about the conversation, Candelaria objected to any testimony containing hearsay statements made by Vaught. The Commonwealth responded that Vaught's statements were made in furtherance of the conspiracy to commit arson and that they were also statements against his penal interest. The circuit court overruled Candelaria's objection and allowed Bonome to testify about the conversation.

Bonome testified Vaught told him he was going to give Candelaria "a hundred and fifty dollars and a flak jacket" in exchange for burning his vehicle. Vaught also told Bonome he reported the Hummer as stolen. Bonome explained Vaught previously told him he wanted to buy a new vehicle and he planned to obtain "insurance money" from his Hummer for that purpose.

John Ennis, the deputy fire marshal who investigated the fire that destroyed Vaught's Hummer, also testified at Candelaria's trial. Based on his examination of the vehicle, Ennis determined the fire started in the "seat area" of the passenger compartment of the Hummer instead of its engine compartment. Due to its point of origin and particular characteristics, Ennis concluded the fire was not accidental. Rather, Ennis determined an incendiary fire was purposefully set in the Hummer.

Christopher Arnold of North American Automotive Forensic Consultants testified as an expert in the field of "ignition locks, steering column locks, antitheft devices and auto theft." Arnold examined Vaught's vehicle at the request of his insurance company. Arnold testified in detail about the particular characteristics of the anti-theft system in Vaught's Hummer, and explained the vehicle could not be "hot-wired." Arnold then noted there were no signs indicating the ignition lock in Vaught's vehicle had been forced or otherwise compromised. Based on his examination of the ignition lock, Arnold concluded Vaught's Hummer could have only been operated with a "properly cut key."

Eric Lewis, a special investigator from Vaught's insurance company, testified about several conversations he had with Vaught following the burning of his Hummer.[2] Lewis testified Vaught recently attempted to trade in his Hummer for a new vehicle, but was unable to obtain an adequate trade-in price. Lewis also testified Vaught told him the Hummer only had one key. Further, Vaught told Lewis and other representatives from the insurance company that the key was not lost when the Hummer was stolen and that he still had the key to the vehicle.

Following the presentation of evidence and closing argument from the parties, the jury retired to deliberate. During deliberation, the jury asked the circuit court a series of questions. Notably, the jury asked for a transcript of Benson's trial testimony. When the circuit court informed the jury that the requested transcript was unavailable, one juror spontaneously stated: "[W]e have Corporal Benson's written testimony, but we didn't get all the others. Can we get copies of those?" The circuit court told the juror that any written statements from other witnesses were not admitted into evidence, and therefore, could not be considered. Upon further deliberation, the jury convicted Candelaria of the charged offenses. This appeal followed.

---

[2] Candelaria did not object to this testimony on hearsay grounds.

II.  ANALYSIS

On appeal, Candelaria contends the circuit court erred by admitting Benson's written statement to the fire marshal into evidence.  Candelaria argues Benson's written description of the arson was an inadmissible prior consistent statement.  Candelaria also contends the circuit court erred by allowing Bonome to testify regarding the conversation he had with Vaught after the Hummer was burned because Vaught's statements were inadmissible hearsay.

Assuming without deciding that the circuit court erred by admitting the statements at issue,[3] we conclude the admission of these statements into evidence constituted harmless error under the particular circumstances of this case.  When determining whether non-constitutional evidentiary error is harmless in the context of a criminal proceeding, we apply the statutory standard provided in Code § 8.01-678.  See Rose v. Commonwealth, 270 Va. 3, 11, 613 S.E.2d 454, 458 (2005).  Pursuant to that statute, non-constitutional error is harmless "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached."  Code § 8.01-678.

Interpreting Code § 8.01-678, the Supreme Court has explained:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . .  But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . .  If so, or if one is left in grave doubt, the conviction cannot stand.

Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)).

---

[3] Although we are generally precluded from accepting concessions of law made on appeal, see Copeland v. Commonwealth, 52 Va. App. 529, 531-32, 664 S.E.2d 528, 529 (2008), we note the Commonwealth conceded the circuit court erred by admitting these statements.

Whether . . . an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Perry v. Commonwealth, 58 Va. App. 655, 672, 712 S.E.2d 765, 774 (2011) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986)).

An error is harmless . . . if "other evidence of guilt is so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict," or, "even if the evidence of the defendant's guilt is not overwhelming, . . . if the evidence admitted in error was merely cumulative of other, undisputed evidence."

McLean v. Commonwealth, 32 Va. App. 200, 211, 527 S.E.2d 443, 448 (2000) (quoting Ferguson v. Commonwealth, 16 Va. App. 9, 12, 427 S.E.2d 442, 444-45 (1993)).

Applying these standards to the present case, we conclude the admission of Benson's written statement and Vaught's statements to Bonome did not affect the jury's verdict. The statements at issue were cumulative of and corroborated by additional competent evidence, and the Commonwealth presented substantial evidence establishing Candelaria's guilt.

A. BENSON'S WRITTEN STATEMENT

On appeal, Candelaria emphasizes the importance of Benson's testimony. As an eyewitness to the arson of Vaught's vehicle, Candelaria maintains that Benson's testimony was of critical importance in this case. Candelaria contends the admission of Benson's written statement to the fire marshal improperly emphasized his testimony about the arson, and thereby prejudiced him and negatively affected the jury's verdict. While we acknowledge the importance of Benson's testimony, we disagree with Candelaria's argument.

As a prior consistent statement, Benson's written statement to the fire marshal was cumulative of his trial testimony. The written statement did not contain additional information about the arson of Vaught's vehicle. Benson testified consistently with his written statement throughout Candelaria's trial, as a witness of both the Commonwealth and Candelaria. Accordingly, Benson's description of the arson would have been before the jury even if the written statement had not been admitted.

Furthermore, Benson's testimony and written statement were corroborated by substantial evidence. Two other Marines who worked with Candelaria testified that he told them he burned Vaught's Hummer. Savidis testified Candelaria told him he burned Vaught's Hummer and that Benson unknowingly participated in the arson by driving him to the restaurant where he picked up the vehicle. Bonome testified Candelaria told him he burned Vaught's vehicle with a fire he started using gasoline. Bonome also testified Candelaria told him he broke a window in the Hummer to make it look like it had been stolen, corroborating Benson's testimony that he heard glass breaking before the fire started.

Additionally, the expert testimony presented in this case supported Benson's testimony and written statement. Ennis, the fire marshal, testified that the fire that destroyed Vaught's Hummer was intentionally started in the passenger compartment of the vehicle, corroborating Benson's implied claim that Candelaria burned the vehicle. Arnold, the ignition lock and auto theft expert, testified Vaught's vehicle could have only been operated by a key, corroborating Benson's testimony that Candelaria possessed a key to the Hummer that he gave to Vaught after the fire.

Notwithstanding the substantial incriminating evidence presented by the Commonwealth, Candelaria contends the questions asked by the jury suggested that the admission of Benson's written statement influenced the verdict. Candelaria contends the jury's request for written

statements from additional witnesses demonstrated an undue emphasis was placed on Benson's written statement. Candelaria's argument is misplaced. "A jury speaks only through its unanimous verdict." Kennemore v. Commonwealth, 50 Va. App. 703, 708, 653 S.E.2d 606, 608-09 (2007).

> In Virginia, as elsewhere, the deliberations of jurors "during retirement, their expressions, arguments, motives, and beliefs, represent that state of mind which must precede every legal act and *is in itself of no jural consequence*." A question posed to the court during deliberations, after all, could suggest as little as the tentative views of a single juror. It cannot [bind] the jury as a whole.

Id. at 709, 653 S.E.2d at 609 (quoting 8 Wigmore, Evidence § 2348, at 680 (McNaughton rev. 1961)).

In the present case, one juror spontaneously asked for written statements from other witnesses after the circuit court informed the jury that a transcript of Benson's testimony was unavailable. This request cannot be construed to imply that the jury placed an undue influence on Benson's written statement. The request may have only reflected the view of the particular juror who asked for the statements. Even if the request was made on behalf of the entire jury, however, the request may have simply been made as a matter of convenience to provide additional written statements for review.

Benson's written statement was both cumulative of other evidence and corroborated by significant additional evidence presented by the Commonwealth. Under these circumstances, we conclude the admission of the statement did not affect the jury's verdict.

## B. VAUGHT'S STATEMENTS TO BONOME

Candelaria also contends the statements Vaught made to Bonome regarding the arson of the vehicle influenced the jury's verdict. Candelaria argues Vaught's conversation with Bonome was particularly significant because it established he was compensated for his role in the arson.

Without Vaught's statements to Bonome, Candelaria maintains the evidence failed to establish he was paid to burn the Hummer.[4]  Again, we disagree with Candelaria's argument.

Like Benson's written statement, Vaught's statements to Bonome were supported by substantial corroborating evidence.  While Candelaria argues Bonome's testimony regarding Vaught's statements was the only evidence establishing he was compensated for his role in the arson, Savidis testified that Candelaria told him Vaught wanted to pay him to burn his vehicle.  Moreover, Benson testified Vaught also tried to pay him for assisting in the arson.

Furthermore, Benson clearly established Vaught was involved in the arson.  Benson testified Vaught met him and Candelaria shortly after Candelaria burned the Hummer and that Candelaria gave the key to the vehicle to Vaught.  Benson also testified Vaught pressured him to not report the arson to the police or military personnel.  Vaught's statements to Lewis also implicated him in the crime.  Vaught told Lewis he had the only key to the Hummer and that he still had the key after the arson.  As additional testimony established the Hummer could have only been driven with a properly cut key, Vaught's possession of the key after the arson implied he participated in the offense.

In light of the ample evidence presented by the Commonwealth establishing Candelaria's guilt and the significant evidence corroborating Vaught's involvement in the arson, we conclude the admission of Vaught's statements to Bonome was, at most, harmless error.

### III.  CONCLUSION

In summary, we conclude any error potentially resulting from the admission of the evidence at issue did not affect the jury's verdict.  Benson, an eyewitness, testified Candelaria burned Vaught's vehicle, and Savidis and Bonome testified Candelaria admitted he burned the

---

[4] We note the Commonwealth was not required to prove Candelaria profited from the arson in order to convict him of the charged offenses.  See Code §§ 18.2-22 and 18.2-81.

Hummer. Moreover, the expert testimony regarding the nature of the fire and the specific anti-theft system in Vaught's Hummer supported the testimony of Benson, Savidis, and Bonome. The Commonwealth presented substantial evidence establishing Candelaria's guilt, and the statements at issue were corroborated by and cumulative of additional evidence presented at trial. Considering these circumstances, we conclude the admission of the statements at issue constituted harmless error and affirm Candelaria's convictions.

Affirmed.