PRESENT: Carrico, C.J., Lacy, Hassell, Keenan, Koontz, and Kinser, JJ., and Stephenson, S.J.

COMMONWEALTH OF VIRGINIA

                                              OPINION BY
v.  Record No. 000130     SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                                              November 3, 2000
HOMER D. MONTAGUE

FROM THE COURT OF APPEALS OF VIRGINIA

The sole issue in this appeal is whether the felony-murder statute applies to the facts of this case.

I

Tried by a jury in the Circuit Court of the City of Richmond, Homer D. Montague was convicted of felony murder in violation of Code § 18.2-33.* The trial court sentenced Montague to imprisonment for 15 years, with seven years suspended. Montague appealed his felony-murder conviction to the Court of Appeals, which reversed the trial court's judgment and remanded the case. Montague v. Commonwealth, 31 Va. App. 187, 522 S.E.2d 379 (1999). We awarded the Commonwealth this appeal.

II

The facts are undisputed. On August 23, 1997, between 11:00 a.m. and noon, Leslie Louick parked her red 1991 Dodge Shadow automobile in the City of Richmond, on Grayland Avenue,

_____

* Montague also was convicted of grand larceny and of eluding the police for which he received sentences of three years' imprisonment, with two years suspended, and 12 months in jail, with six months suspended, respectively.

near Boulevard.  The following day, around noon, Louick discovered that her car had been stolen.  During the daytime on August 24, a witness saw Montague driving Louick's car in the Jackson Ward area of the City.

On the evening of August 24, Richmond City police officers set up a routine traffic checkpoint on the Fourth Street Bridge. Officer Chester Roberts, Jr., was authorized to operate the southbound chase car and to pursue any vehicles that attempted to evade the checkpoint.

Between 10:00 and 11:00 p.m., Officer Roberts saw two automobiles approach the bridge from the south.  One car was a large sedan.  The other car was Louick's, driven by Montague. The two cars had traveled approximately 100 feet onto the bridge when each made an illegal U-turn across double yellow lines and headed south.

Officer Roberts immediately activated his vehicle's emergency lights and siren and pursued the fleeing cars.  At an intersection, the sedan turned left, and the car driven by Montague continued forward.  The officer pursued Montague into the Gilpin Court neighborhood.

After Montague entered Gilpin Court, Roberts saw the car's illuminated brake lights.  Roberts also could see and hear that the car was skidding as Montague was attempting to negotiate a left turn onto St. Paul Street.  Montague failed to make the

turn, and the car traveled over the curb and struck ten-year-old Antoine Lamont Lewis, who was riding his bicycle on the sidewalk.

Montague exited the car and ran, and another police officer apprehended him less than a block away.  Montague later gave a statement to Officer Roberts in which he admitted that he was the driver of Louick's car and that he had stolen it.

Antoine Lewis died at the Medical College of Virginia Hospitals.  His death was the result of trauma to his brain caused by the collision.

### III

Code § 18.2-33 provides that "[t]he killing of one accidentally, contrary to the intention of the parties, while in the prosecution of some felonious act other than those specified in §§ 18.2-31 and 18.2-32, is murder of the second degree."  The felony-murder doctrine originated at common law and, when supported by the evidence, operates to elevate to second-degree murder a homicide committed during the commission of a felony by imputing malice to the killing.  F.P. Heacock v. Commonwealth, 228 Va. 397, 403, 323 S.E.2d 90, 93 (1984); Wooden v. Commonwealth, 222 Va. 758, 762, 284 S.E.2d 811, 814 (1981).

Although the homicide in the present case did not occur until at least eleven hours after the grand larceny was completed, the Commonwealth contends that the felony-murder

3

statute applies. The Commonwealth asserts that Montague's flight from police in an effort to avoid detection of his crime established a causal connection between the larceny and the homicide.

Montague contends, on the other hand, that the felony-murder statute does not apply because the homicide and the underlying felony "were widely and distinctly separated in time, distance and continuity of action, and were not parts of the same criminal enterprise." Montague relies mainly on our decisions in Doane v. Commonwealth, 218 Va. 500, 237 S.E.2d 797 (1977), and Haskell v. Commonwealth, 218 Va. 1033, 243 S.E.2d 477 (1978).

In Doane, the defendant, who was charged with felony murder, had stolen an automobile in the City of Richmond around noon on July 7, 1976. The following day, around 6:15 p.m., the defendant, while operating the stolen car, ran a stop sign and killed a passenger in another vehicle. The accident occurred in Smyth County, approximately 280 miles from the City of Richmond. 218 Va. at 501, 237 S.E.2d at 798. The Commonwealth contended that larceny is a continuing offense, and, therefore, the homicide occurred during the commission of a felony. The trial court agreed and convicted the defendant of second-degree murder. Id. at 501-02, 237 S.E.2d at 798. We, however,

4

reversed the judgment of the trial court.  Id. at 503, 237 S.E.2d at 799.

We noted, in Doane, that "[t]he concept of larceny as a continuing offense is a fiction of the common law, . . . which allows a thief who steals within a jurisdiction to be tried for the offense in any venue of that jurisdiction to which he transports, or wherein he possesses, the fruits of the larceny." Id. at 502, 237 S.E.2d at 798.  Although we recognize this legal fiction in support of venue considerations, we declined, in Doane, to extend the fiction to satisfy the requirements of the felony-murder statute.  Id.

We also said, in Doane, that, without the benefit of the fiction, there was "neither a showing of causal relationship nor a showing of nexus between the larceny . . . and the accidental killing."  Id.  We further stated, however, that we would defer to another day the issue "[w]hether that showing must be one of causal relationship, or whether a showing of mere nexus will suffice."  Id. at 502-03, 237 S.E.2d at 798-99.

Approximately six months after the Doane decision, we decided Haskell, another felony-murder case.  In Haskell, the three defendants and their companion attacked, beat, and searched an intoxicated sailor in an attempt to rob him.  When the defendants and their companion discovered that the sailor had no money, they tried to leave in their automobile.  The

5

beaten sailor, however, sought to prevent his assailants' escape, and, during a scuffle, the defendants' companion shot and killed the sailor. 218 Va. at 1036-37, 243 S.E.2d at 478-79. The defendants contended that, as a matter of law, the homicide did not occur during the commission of a felony because the attempt to rob had been abandoned by them before the altercation between their companion and the sailor ended in the fatal shooting. Id. at 1039, 243 S.E.2d at 480.

In Haskell, we affirmed the three defendants' convictions for felony murder. In doing so, we adopted the so-called res gestae rule, which represents the prevailing view among other jurisdictions. The rule provides that "the felony-murder statute applies where the killing is so closely related to the felony in time, place, and causal connection as to make it a part of the same criminal enterprise." Id. at 1043-44, 243 S.E.2d at 483. We found, in Haskell, that the killing of the sailor was closely related in time, place, and causal connection to the attempted robbery of him, and, therefore, the underlying felony and the homicide were parts of the same criminal enterprise. Id. at 1043, 243 S.E.2d at 483.

It is important to note that the required elements of the rule, i.e., time, place, and causal connection, are stated in the conjunctive. Therefore, all three elements must be established for the felony-murder statute to apply.

6

In the present case, the grand larceny occurred at least eleven hours before the homicide. Thus, we agree with the Court of Appeals' conclusion that "the accidental killing of the victim was not related in time to the larceny." 31 Va. App. at 192, 522 S.E.2d at 381-82. We also conclude that the place element has not been established as the larceny and the homicide transpired in different parts of the City, and Montague had been seen driving Louick's car in still another part of the City in the interim. We hold, therefore, that the grand larceny and the homicide were not parts of the same criminal enterprise as required by the res gestae rule and that the felony-murder statute does not apply to the facts of this case.

Accordingly, we will affirm the judgment of the Court of Appeals.

Affirmed.