COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Petty, Chafin and Senior Judge Bumgardner
Argued by teleconference


TIMOTHY WOODARD

v.      Record No. 2048-11-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE WILLIAM G. PETTY
MARCH 26, 2013

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
Joseph W. Milam, Jr., Judge

Andrew G. Wiggin (Andrew G. Wiggin, P.C., on brief), for
appellant.

Steven A. Witmer, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Timothy Woodard was convicted in a bench trial of felony murder, in violation of Code

§ 18.2-33.[1]  On appeal, Woodard argues that the trial court erred in overruling his motion to

strike the evidence because the evidence was insufficient to convict him of felony murder.

Specifically, Woodard argues that the underlying felony, the sale of ecstasy, was completed

before the homicide, and therefore, the homicide did not occur within the *res gestae* of the

predicate offense.  For the following reasons, we agree.  Therefore, we reverse Woodard's

conviction of felony murder.

---

[1] Woodard was also convicted of possession of ecstasy with intent to distribute and of
selling ecstasy, both in violation of Code § 18.2-248.  Neither of those convictions is before us in
this appeal.

# I. BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

On November 16, 2010, Kayla Beame and Cynthia Crumpton were shopping at a store in Danville, Virginia. While there, Beame called Eldesa Smith to see if she could arrange a purchase of ecstasy[2] from Woodard. Smith called Woodard and arranged the purchase. Woodard picked up Smith on his way to the store.

Woodard and Smith pulled up to the entrance of the store where Beame was waiting. Beame got into the backseat of Woodard's car. Woodard parked his car in the store parking lot. Woodard then sold Beame ten to fifteen star-shaped ecstasy pills. After completing the transaction, Beame exited the car and Woodard and Smith left the parking lot. All of this occurred at approximately 7:00 p.m.

Beame and Crumpton then met in the parking lot and got into Crumpton's van. Beame showed the ecstasy to Crumpton, but neither Beame nor Crumpton ingested any of the pills at that time. Beame, Beame's daughter, Crumpton, Crumpton's fiancé, and Smith's daughter then met for dinner at a restaurant. Beame consumed alcohol with her dinner. After dinner, Crumpton and Beame stopped at a convenience store and purchased beer and cigarettes. They then went to Crumpton's apartment in Danville. Smith arrived at the apartment later in the evening. Beame and Smith took some of the ecstasy pills. Smith left the apartment with her daughter at approximately 10:00 p.m.

---

[2] Ecstasy is the popular, street name for 3,4-methylenedioxymethamphetamine (MDMA).

Crumpton fell asleep at approximately 11:00 p.m. Beame woke Crumpton up between 2:00 and 3:00 a.m. Sometime around 4:30 a.m., Beame and Crumpton fell asleep. Crumpton slept until approximately 1:00 p.m., when she was awakened by her fiancé, who expressed concern about Beame's condition.

Beame was not breathing correctly. Crumpton's fiancé called 911 while Crumpton started CPR. Beame was in cardiac arrest and was not breathing when the paramedics arrived. Beame remained unresponsive on the way to the hospital, although her heart started beating again. Shortly after arriving at the hospital, Beame was found to be brain dead. Beame was pronounced dead on November 18, 2010.

A search warrant was executed at Woodard's home. A large quantity of ecstasy pills and powder were found at the home. Woodard was arrested, and he was interviewed by Detective Goins of the Danville Police Department. Woodard made a verbal statement and signed several written statements. Woodard admitted meeting Beame and selling ecstasy to her. Woodard knew that Beame had never taken ecstasy before and that Beame was going to "party." Woodard further admitted that he was a past user of ecstasy and he knew "that ecstasy can kill a person."

At trial, the evidence indicated that Beame's blood contained .48 mg/liter of ecstasy, which was a lethal level of the drug. Beame's blood also contained a non-toxic level of methadone. The Commonwealth presented an expert witness, Dr. Suzuki, who testified that Beame's death was caused by ecstasy intoxication. After hearing the evidence, the trial court held that there was a sufficient "causal connection" and "temporal connection" between the sale of the ecstasy and Beame's killing to constitute felony murder.

Accordingly, the trial court convicted Woodard of felony murder in violation of Code § 18.2-33. This appeal followed.

II. ANALYSIS

On appeal, Woodard argues that the evidence was insufficient to sustain his felony-murder conviction. We agree and reverse the conviction.

"When reviewing the sufficiency of the evidence to support the verdict in a bench trial, 'the trial court's judgment is entitled to the same weight as a jury verdict and will not be disturbed on appeal unless it is plainly wrong or without evidence to support it.'" Burrell v. Commonwealth, 58 Va. App. 417, 433, 710 S.E.2d 509, 517 (2011) (quoting Hickson v. Commonwealth, 258 Va. 383, 387, 520 S.E.2d 643, 645 (1999)). It is the prerogative of the trier of fact "'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" Brown v. Commonwealth, 56 Va. App. 178, 185, 692 S.E.2d 271, 274 (2010) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

The sufficiency of the evidence in this case is controlled by the felony-murder statute, Code § 18.2-33. Felony murder, as defined by statute, is "the killing of one accidentally, contrary to the intention of the parties, while in the prosecution of some felonious act." Code § 18.2-33. "The felony-murder doctrine originated at common law and, when supported by the evidence, operates to elevate to second-degree murder a homicide committed during the commission of a felony by imputing malice to the killing." Commonwealth v. Montague, 260 Va. 697, 700, 536 S.E.2d 910, 912 (2000). The imputation of malice is necessary because "'the increased risk of death or serious harm occasioned by the commission of a felony demonstrate[s] the felon's lack of concern for human life.'" Talbert v. Commonwealth, 17 Va. App. 239, 245, 436 S.E.2d 286, 289 (1993) (quoting King v. Commonwealth, 6 Va. App. 351, 354, 368 S.E.2d 704, 705-06 (1988)).

To convict a defendant of felony murder, however, the killing must be committed "while in the prosecution" of the underlying offense, or as it is often said, within the *res gestae* of the underlying offense. In other words, the killing must be "'so closely related to the felony in time, place, and causal connection as to make it part of the same criminal enterprise.'" Montague, 260 Va. at 701, 536 S.E.2d at 913 (quoting Haskell v. Commonwealth, 218 Va. 1033, 1043-44, 243 S.E.2d 477, 483 (1978)); see also Montano v. Commonwealth, ___ Va. App. ___, ___, ___ S.E.2d ___, ___ (Mar. 26, 2013) (holding that the felony-murder rule elements were met where the underlying felony of driving while intoxicated was "inextricably linked and integral to the victim's death"). Notably, "[T]he required elements of the [*res gestae*] rule, i.e., time, place, and causal connection, are stated in the conjunctive. Therefore, all three elements must be established for the felony-murder statute to apply." Montague, 260 Va. at 702, 536 S.E.2d at 913. Accordingly, if the underlying felony and the killing are separated by time, place, or causal connection, then they are "not 'parts of one continuous transaction,' [Haskell, 218 Va. at 1041, 243 S.E.2d at 482], and the killing did not occur 'in the prosecution of some felonious act' in violation of Code § 18.2-33." Talbert, 17 Va. App. at 245-46, 436 S.E.2d at 290.

The underlying offense on which Woodard's felony-murder conviction was predicated was the sale of ecstasy in violation of Code § 18.2-248. The killing in this case did not occur during the prosecution of the sale of the ecstasy because two of the felony-murder rule elements were missing: time and place. Woodard sold the ecstasy to Beame in the store parking lot. The money and drugs exchanged hands, goodbyes were said, and Woodard and Beame never saw each other again. This was not a continuing transaction; it was a completed transaction. See Moreno v. Baskerville, 249 Va. 16, 19, 452 S.E.2d 653, 655 (1995) (holding that distribution of drugs is not a continuing offense); see also Kelso v. Commonwealth, 282 Va. 134, 137, 710

S.E.2d 470, 472 (2011) ("[T]he distribution of marijuana to a juvenile in violation of Code § 18.2-255(A)(i) is a discrete act which when completed constitutes the commission of the crime.").

The time element was not established in this case. The killing must be related in time to the underlying felony. See Montague, 260 Va. at 702, 536 S.E.2d at 913 (holding that the time element of the felony-murder rule was not established because the underlying felony took place eleven hours before the killing). Here, the killing occurred after the sale of ecstasy. Beame purchased the ecstasy from Woodard at approximately 7:00 p.m. Beame then went to dinner, stopped at a gas station for cigarettes, and went to Crumpton's apartment. Beame did not ingest the ecstasy until approximately 9:30 p.m. to 10:00 p.m., over two hours later.[3] Thus, the underlying felony and the killing did not occur at the same time, and accordingly, the time element of the felony-murder rule was not established.

The place element was also not established in this case. The killing must occur in the same place as the underlying felony. Id. (holding that the place element of the felony-murder rule was not established because the underlying felony transpired in a different part of the city

_____

[3] Beame did not die until two days later, November 18, 2010. Nevertheless, the "killing" occurred when Beame ingested the ecstasy. "Killing," the present participle of the verb "kill," means "to cause physical death." Black's Law Dictionary 948 (9th ed. 2009).

> "If the mortal wound is inflicted at [the time of the commission of the underlying felony], but X lingers for a few days before he dies, at which time A, having fled the scene, is many states distant, the homicide is nevertheless in the commission of the [underlying felony]; it is the infliction of the fatal wound, not the actual death, which must occur in the commission of the felony."

Wayne R. LaFave, Substantive Criminal Law 462 n.96 (2d ed. 2003). Throughout the opinion we use the statutory term "killing" rather than the more grammatically acceptable term "death" in order to avoid conflating the two.

than the killing). The underlying felony took place in the store parking lot. Beame did not ingest the ecstasy until she was at Crumpton's apartment. Thus, the underlying felony and the killing did not occur at the same place, and accordingly, the place element of the felony-murder rule was not established.

Therefore, we hold that the killing in this case did not occur during the prosecution of the sale of ecstasy because the time and place elements of the felony-murder rule were not established. [4]

> that where, as here, death results from ingestion of a controlled substance, classified in law as dangerous to human life, the homicide constitutes murder of the second degree within the intendment of Code § 18.2-33 if that substance had been distributed to the decedent in violation of the felony statutes of this Commonwealth.

Heacock v. Commonwealth, 228 Va. 397, 405, 323 S.E.2d 90, 95 (1984). This holding, however, must be viewed in light of the facts of Heacock, which are distinguishable from this case. We tie the holding to the facts because of the limiting language in the holding itself: "[W]here, *as here*, death results from ingestion of a controlled substance . . . ." Id. (emphasis added). The holding merely reflects the fact that the time, place, and causal connection elements of the felony-murder rule were established in Heacock.

In Heacock, the defendant, Heacock, supplied a quantity of cocaine to a "drug party." Heacock did not just supply the cocaine—he also cut the cocaine into separate portions on a table and invited the party guests to help themselves. A little later in the evening, Heacock went to an

---

[4] Woodard argues that there is no causal relation between the sale of drugs and the killing because Beame unilaterally chose the amount of ecstasy she ingested. Because we hold that the time and place elements of the felony-murder rule are not present in this case, we need not decide whether there was a causal relation between the sale of the ecstasy and the killing.

- 7 -

upstairs bedroom with a number of other guests. While in the bedroom, Heacock and another guest took a spoon and prepared some cocaine to be intravenously injected. A party guest was injected with the cocaine and died from an overdose.

The facts of Heacock establish every element of the felony-murder rule. The underlying offense, distribution of cocaine, occurred at the same time as the killing. The underlying offense also occurred in the same place as the killing. Finally, there was a causal relation between the underlying felony and the death. The Supreme Court's holding reflects these facts. Here, as discussed above, the underlying felony occurred at both a different time and a different place than the killing. Therefore, the holding in Heacock is inapplicable to this case.

Our recent ruling in Hylton v. Commonwealth, 60 Va. App. 50, 723 S.E.2d 628 (2012), is also inapplicable to this case. Hylton was convicted of felony murder under Code § 18.2-33. The evidence indicated that Hylton purchased methadone, took it home, poured it into a medicine cup—which her son used to take cold medicine—and left the cup unattended in the kitchen. Her son drank the methadone and subsequently died from an overdose. We held that the son's "drinking of the methadone was 'closely related . . . in time, place, and causal connection' to [Hylton's] possession of the drug." Id. at 59, 723 S.E.2d at 632-33 (quoting Cotton v. Commonwealth, 35 Va. App. 511, 515, 546 S.E.2d 241, 243 (2001)). In so holding, we reasoned that Hylton's felonious possession of the methadone continued up until the point that her son drank it; therefore, the killing occurred within the *res gestae* of Hylton's felonious possession.

Here, Woodard ceased to possess the ecstasy as soon as the transaction with Beame was completed in the store parking lot. The holding in Hylton is entirely dependent upon Hylton's

continuing possession of the methadone. Such a holding cannot be extended to this case. The facts in this case, unlike those in Hylton, are missing the essential elements of time and place.

The felony-murder statute is designed to punish those persons who cause a killing that occurs during the furtherance of a felony. That killing, however, must be so closely related in time, place, and causal connection as to be part of the same felonious criminal enterprise. Here, because the felonious criminal enterprise, the distribution of ecstasy, had clearly ended prior to the killing, the trial court's conclusion that the killing was part of the same criminal enterprise was plainly wrong and without evidence to support it. Because the evidence is insufficient to convict Woodard of felony murder, we reverse Woodard's conviction for that offense.[5]

III. CONCLUSION

For the foregoing reasons, we reverse Woodard's conviction.

Reversed.

---

[5] Woodard invites us to remand this case back to the circuit court so that the trial judge can reconsider the sentence imposed for his convictions of possession of ecstasy with intent to distribute and sale of ecstasy under revised sentencing guidelines. We decline his invitation. Woodard's assignment of error only challenged his conviction of felony murder. Therefore, the remaining convictions are not before us and the orders of conviction are final.