COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Chafin and Senior Judge Annunziata
Argued at Alexandria, Virginia


CARLOS ABRAHAM MARTINELLY MONTANO, S/K/A
  CARLOS MARTINELLY-MONTANO
                                                        OPINION BY
v.      Record No. 0286-12-4              JUDGE ROSEMARIE ANNUNZIATA
                                                    MARCH 26, 2013
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Lon E. Farris, Judge

Dimitri L. Willis (Michael S. Arif; Arif & Associates, P.C., on brief),
for appellant.

Donald E. Jeffrey, III, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


        Carlos Abraham Martinelly Montano (appellant) entered guilty pleas to the charges of third

offense driving while intoxicated, involuntary manslaughter, driving with a suspended license, and

two counts of maiming resulting from driving while intoxicated.  Following a bench trial, he was

also convicted of felony murder predicated on the felony driving while intoxicated offense.  On

appeal, appellant argues the trial court erred by 1) "imputing malice to [his] action of drunk

driving," 2) "holding that the homicide was within the *res gestae* of the felonious undertaking,"

3) "finding that [he] caused the death in an effort to further the underlying felony," and 4) "violating

the principles of double jeopardy by imposing punishments for involuntary manslaughter and felony

murder for the death of one person."[1]  We disagree and affirm the judgment of the trial court.

---

[1] At oral argument before this Court, appellant expressly waived consideration of this
issue on appeal.  Accordingly, we do not address this assignment of error.

BACKGROUND

"Under familiar principles of appellate review, we view the evidence and all reasonable inferences fairly deducible from that evidence in the light most favorable to the Commonwealth, the party that prevailed below." Banks v. Commonwealth, 41 Va. App. 539, 543, 586 S.E.2d 876, 877 (2003).

So viewed, the evidence proved that on the morning of August 1, 2010, Steven Lester was driving in a 45-mile-per-hour zone when he saw appellant's vehicle rapidly approaching him from behind. Lester explained appellant's vehicle appeared to hit the wall of a bridge and then bounce towards the wall on the opposite side of the road. Appellant's car struck a vehicle in which three women were riding. One of the women died as a result of injuries sustained in the collision, and the other two suffered serious injuries.

Appellant was transported to a hospital after emergency assistance arrived at the scene of the crash. Appellant's blood was tested at the hospital, and his blood alcohol content was .20% by weight by volume at the time the test was administered. The police found nearly twenty beer containers in appellant's vehicle. One of the open cans still contained beer and had condensation on it, suggesting appellant had been drinking it while driving, although appellant initially claimed he had stopped drinking the previous night.

Dr. Carol O'Neal testified as an expert in the field of forensic toxicology. She explained alcohol consumption "slow[s] down certain processes of the body both physical and mental." A blood alcohol concentration above .08% by weight by volume results in increased reaction time, decreased vision, decreased decision-making ability, and a general loss of coordination making it more difficult for a person to respond quickly to an emergency. Above .12% a person experiences tunnel vision and cannot see objects in the periphery. O'Neal stated that at or above .20% a driver is "fifty times more likely to be involved in an accident . . . ." Alcohol consumption impairs

reaction time such that an impaired driver takes longer to recognize an emergency and to take evasive action. She also emphasized that "as the concentration increases, the effects become more intense."

Following argument, the trial court concluded that third offense driving under the influence at appellant's level of impairment was an inherently dangerous activity, that malice was imputed to appellant's actions, and that the death occurred within the *res gestae* of the underlying felony.

ANALYSIS

I.

Appellant asserts the trial court erred "by imputing malice to [his] action of drunk driving."

Code § 18.2-33 states:

> The killing of one accidentally, contrary to the intention of the parties, while in the prosecution of some felonious act other than those specified in §§ 18.2-31 and 18.2-32, is murder of the second degree and is punishable by confinement in a state correctional facility for not less than five years nor more than forty years.

Thus, Code § 18.2-33 provides that an accidental killing accompanied by some felonious act, other than those specified in Code §§ 18.2-31 and 18.2-32, will support a second-degree murder conviction. In such case, malice is imputed and raises an accidental homicide to the level of second-degree murder. See Heacock v. Commonwealth, 228 Va. 397, 403-04, 323 S.E.2d 90, 94 (1984). "The statute 'encompasses all felonious acts' not expressly excluded and is not limited to those felonies from which death is a foreseeable consequence." Hylton v. Commonwealth, 60 Va. App. 50, 52-53, 723 S.E.2d 628, 629 (2012) (quoting Heacock, 228 Va. at 404, 323 S.E.2d at 94).

> While § 18.2-32 [first-degree felony murder] contemplates a "killing with malice", the malice intrinsic in the commission of one of the predicate felonies "provides the malice prerequisite to a finding that the homicide was murder." Wooden v.

- 3 -

> Commonwealth, 222 Va. 758, 762, 284 S.E.2d 811, 814 (1981).
> The same imputation of malice is implicit in § 18.2-33 which
> contemplates an accidental killing; the commission of *any*
> felonious act (other than those expressly excepted) during the
> prosecution of which a death occurs supplies the malice which
> raises the incidental homicide to the level of second-degree
> murder. This statute codifies ancient common law. See Whiteford
> v. Commonwealth, 27 Va. (6 Rand.) 721 (1828).

Heacock, 228 Va. at 403, 323 S.E.2d at 93.

> "The [felony-murder] doctrine was developed to elevate to
> murder a homicide committed during the course of a felony by
> imputing malice to the killing. The justification for imputing
> malice was the theory that the increased risk of death or serious
> harm occasioned by the commission of a felony demonstrated the
> felon's lack of concern for human life. . . . The purpose of the
> doctrine was to deter inherently dangerous felonies by holding the
> felons responsible for the consequences of the felony, whether
> intended or not."

Barnes v. Commonwealth, 33 Va. App. 619, 630-31, 535 S.E.2d 706, 712 (2000) (quoting King

v. Commonwealth, 6 Va. App. 351, 354, 368 S.E.2d 704, 705-06 (1988) (citations omitted)).

The holdings in Heacock and Hylton that Code § 18.2-33 "'encompasses all felonious acts' not

expressly excluded," Hylton, 60 Va. App. at 52, 723 S.E.2d at 629 (quoting Heacock, 228 Va. at

404, 323 S.E.2d at 94), necessitate the conclusion that the statute included appellant's felonious

driving while intoxicated. Furthermore, driving while intoxicated or recklessly is a felony

considered to be "inherently dangerous." Davis v. Commonwealth, 12 Va. App. 408, 413, 404

S.E.2d 377, 380 (1991). By implication, it presents a substantial risk to life. See for example,

Snow v. Commonwealth, 33 Va. App. 766, 774-75, 537 S.E.2d 6, 10-11 (2000), noting reckless

driving is dangerous and demonstrates a reckless disregard for human life in the context of Code

§ 18.2-371.1. "'[T]he increased risk of death or serious harm occasioned by the commission of'"

appellant's felony of driving while intoxicated demonstrated appellant's "'lack of concern for

human life'" and constitutes the justification for imputing malice. Spain v. Commonwealth, 7

- 4 -

Va. App. 385, 393-94, 373 S.E.2d 728, 732-33 (1988) (quoting King, 6 Va. App. at 354, 368 S.E.2d at 705-06).

## II.

Appellant also challenges the finding of causation in this case, asserting the trial court erred "by holding that the homicide was within the *res gestae* of the felonious undertaking." Specifically, he argues "[t]he unintended death that occurred as a result of the accident was not in furtherance of either driving under the influence or driving with a suspended license," and, therefore, "should not be considered within the *res gestae* of the felonies."[2]

The Virginia Supreme Court defined the term, *res gestae*, in the context of felony-murder prosecutions in Heacock, concluding that, when the predicate or underlying felony and the homicide "'were parts of one continuous transaction, and were closely related in point of time, place and causal connection,'" a felony murder is established. Heacock, 228 Va. at 405, 323 S.E.2d at 94-95 (quoting Haskell v. Commonwealth, 218 Va. 1033, 1041, 243 S.E.2d 477, 482 (1978)). See also Griffin v. Commonwealth, 33 Va. App. 413, 425, 533 S.E.2d 653, 659 (2000) (holding that "Code § 18.2-33 applies where the initial felony and the accidental killing are parts of one continuous transaction and are closely related in point of time, place and causal connection").[3] When the homicide "resulted from an act which was an integral part of the felony or an act in direct furtherance of or necessitated by the felony," felony murder is established. Id.

---

[2] It appears from the record that the trial court relied only upon the driving under the influence felony offense as the underlying felony for the felony-murder conviction. Accordingly, we do not address whether the driving with a suspended license conviction can serve as the predicate felony under Code § 18.2-33.

[3] "[T]he required elements of the rule, i.e., time, place, and causal connection, are stated in the conjunctive. Therefore, all three elements must be established for the felony-murder statute to apply." Commonwealth v. Montague, 260 Va. 697, 702, 536 S.E.2d 910, 913 (2000). See also, Woodard v. Commonwealth, ___ Va. App. ___, ___ S.E.2d ___ (Mar. 26, 2013), (finding the underlying felony of the sale of ecstasy did not support a conviction for felony

In this case, the elements of *res gestae*, were proved. The expert testimony made clear that the car accident which killed the victim occurred because appellant was highly intoxicated while he was driving. Appellant's vision, motor skills, and reaction time were all adversely affected by his intoxication, and nothing in the record suggests that the accident likely would have occurred had appellant not been under the influence of alcohol. Cf. King, 6 Va. App. at 358, 368 S.E.2d at 708.[4] On the contrary, the evidence established that the underlying felony of driving while intoxicated caused the collision and resulted in an accidental death. See Davis, 12 Va. App. at 413, 404 S.E.2d at 380 (in applying the *res gestae* theory, we affirmed the appellant's conviction because the habitual offender was committing, or "furthering," the underlying offense while attempting to escape detection when the accident occurred (citing King, 6 Va. App. at 358, 368 S.E.2d at 708)).

Appellant's intoxicated operation of his vehicle was, thus, inextricably linked and integral to the victim's death. See Griffin, 33 Va. App. at 425, 533 S.E.2d at 659 (quoting 40 Am. Jur. 2d Homicide § 70 (1999)). Accordingly, we find no error with the trial court's conclusions.[5]

---

murder under Code § 18.2-33 because the killing occurred after the drug sale was completed and in a location different from that of the drug sale and was thus separated from the alleged felony murder by both time and place).

[4] In King, the defendant was convicted of felony murder after the plane in which he and his co-felon were transporting marijuana crashed, killing King's companion. King's conviction of felony murder based on the felony of possession of marijuana with intent to distribute was reversed on the ground that the crash would have occurred even if the defendant had been transporting legal cargo. "The accident stemmed not from the possession or distribution of drugs, but from fog, low cloud cover, pilot error, and inexperience." 6 Va. App. at 358, 368 S.E.2d at 708.

[5] Appellant's reliance on Essex v. Commonwealth, 228 Va. 273, 322 S.E.2d 216 (1984), and his contention that the Commonwealth was required to prove he acted maliciously are misplaced. In Essex the defendant was convicted of three counts of second-degree murder stemming from an accident caused while he was driving while intoxicated. In that case, the

## III.

In his third assignment of error, appellant repeats the arguments he made to support his first two assignments of error, emphasizing that "[t]he accident was not in furtherance of the underlying felonies nor was it the result of any malice on [his] part[.]" He asserts he "did not crash his vehicle in an attempt to further either felony, nor was the car crash necessitated by the felony." "The resulting death," he argues, "was plain happenstance, and not in furtherance of the felony." As these arguments are fully addressed above, we need not separately address this assignment of error.

For the reasons stated, we affirm the trial court's decision and appellant's felony-murder conviction.

<u>Affirmed.</u>

---

defendant's act of driving under the influence was a misdemeanor offense and he was not charged with felony murder under Code § 18.2-33.