UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Chafin and Senior Judge Bumgardner
Argued at Chesapeake, Virginia

GARY JEROME TURNER

MEMORANDUM OPINION[*] BY
v.      Record No. 0067-16-1          JUDGE TERESA M. CHAFIN
JANUARY 10, 2017

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
COUNTY OF JAMES CITY
Michael E. McGinty, Judge

Patrick D. Kelley (Montgomery, Kelley & McKinnon, P.L.C., on
brief), for appellant.

Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
Attorney General; Susan Baumgartner, Assistant Attorney General,
on brief), for appellee.

Following a bench trial, Gary Jerome Turner ("appellant"), was convicted of involuntary

manslaughter in violation of Code § 18.2-36, felonious child abuse or neglect involving the reckless

endangerment of a child in violation of Code § 18.2-371.1(B), and felonious child abuse involving

serious injury to a child in violation of Code § 18.2-371.1(A).[1]  On appeal, appellant challenges the

sufficiency of the evidence to support his convictions.

Background

On appellate review, we consider the evidence presented at trial in the light most

favorable to the Commonwealth, the prevailing party below, and "accord [it] the benefit of all

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Turner was also convicted of reckless driving in violation of Code § 46.2-852.
However, this conviction is not challenged on appeal.

inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004). On August 8, 2011, appellant was driving a minivan owned by his girlfriend, Sheree Brooks (Sheree), on Route 5 in James City County. At approximately 8:00 p.m., the van was involved in a motor vehicle accident. At the time of the collision, there were seven people, including appellant, inside the van. Sheree was the front seat passenger. Eighteen-year-old Shecarra Witts (Shecarra) and three-month-old Shakira Turner (Shakira) were sitting on the second row of seating. Seventeen-year-old Terrance Witts (Terrance), three-year-old Nyiema Brooks (Nyiema), and fourteen-year-old Brashawnta Brooks (Brashawnta) were sitting on the third row of seats in the van.[2]

The investigation of the accident indicated that the van traveled off the right side of the road for 168 feet before it veered back across the road to the left. The van went off the left side of the road then veered to the right. When doing so, the van began to flip and was struck by an oncoming dump truck driven by Harold Lee. The van came to rest against a telephone pole. Lee testified that when he initially saw the van coming toward him, he did not think it was "going to make th[e] turn coming around the curve" due to the speed at which the van was travelling. It was later determined that the van was traveling at approximately fifty-five miles per hour at the time of the crash.

Sheree was ejected from the vehicle through the windshield. Brashawnta was partially ejected; his body was half outside the vehicle after the crash. He sustained a fatal head injury and died at the scene. Terrance was pinned underneath the van. Shakira, the infant, was found on the ground outside the vehicle. Nyiema, apparently uninjured, was standing inside the van

---

[2] Shakira was the daughter of appellant and Sheree. Nyiema was Sheree's daughter. Brashawnta was the son of Sakina Brooks, Sheree's sister. Terrance was Shecarra's brother. The record does not indicate if Terrance and Shecarra were related to any of the other occupants of the van.

after the collision. Lee, who went to the van after the impact, lifted Nyiema out of the vehicle and gave her to one of the witnesses who had rushed to the scene from a nearby recreational area.

At the scene, appellant told the police that he "knew the steering was loose in the vehicle." He said the steering mechanism had come loose in a curve, and he lost control of the vehicle. Officer Randy Coleman later interviewed appellant at Riverside Hospital, where appellant was being treated for a serious head injury sustained in the accident. Appellant told Coleman he was the only one in the van who had been wearing a seat belt.

Examination of Brashawnta's body revealed no bruising or marks that suggested he had been wearing a seat belt. Terrance testified he did not believe Brashawnta was wearing a seat belt at the time of the crash.

Terrance, who was asleep at the time of the collision, had not been wearing a seat belt. He sustained a concussion, back injuries, and injuries from broken glass.

Shecarra testified she was not wearing a seat belt when the crash occurred. She was thrown from the vehicle onto the road. She sustained injuries all over her body, and lost direct vision in one eye.

Shakira sustained a brain hemorrhage and a broken leg in the crash. At the time of appellant's trial, it was unknown whether Shakira would be permanently affected by her injuries. Shecarra could not recall whether Shakira was in a car seat at the time of the collision.

Sakina Brooks, Sheree's sister, was with the group in the van when they picked up appellant on the afternoon of August 8, 2011 before the crash. Sakina testified that appellant picked up Shakira out of her car seat and held her up to both Sheree and Sakina.[3] Sheree told

---

[3] The record is unclear whether the van was moving when appellant picked up Shakira from the car seat.

appellant to put the child back in the seat before the police saw him. Appellant commented, "F the police. This is my daughter."

There was a child's car seat on the second row of seating in the van that was not properly secured to the seat belt. Michael Nash, an expert in child passenger seat safety, concluded that the car seat was improperly installed, and the harness was not employed to secure a child in the seat. The seat was a bare plastic shell with no padding around the areas for the child's head, hips, and legs. Moreover, the harness to the seat was not woven through the holes in the back of the seat, and, therefore, could not have restrained a child in the seat. A child's booster seat was also found among the debris outside the van after the crash. The seat was not an appropriate restraining device for a three-year-old child.

Blood samples drawn from appellant at the hospital after the crash showed the presence of THC, the active ingredient in marijuana. Expert testimony established that the THC in appellant's blood would have impaired his driving ability, although the extent of the impairment could not be quantified. The impairment caused by THC would have included inattentiveness and slowed reaction times during driving. Expert testimony proved that appellant had most likely ingested marijuana within ten hours of the accident. Police officers investigating the crash found a smoking device and a baggie, both containing marijuana residue, inside the vehicle.

After he was released from the hospital, appellant fled the Commonwealth. He was not located by law enforcement for about three and one-half years.

Analysis

When reviewing a challenge to the sufficiency of the evidence on appeal, we consider the evidence "in the light most favorable to the Commonwealth, granting to it all reasonable inferences" that flow from that evidence. Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d

- 4 -

415, 418 (1987)).  Viewing "the record through this evidentiary prism requires [the Court] to 'discard the evidence of the accused in conflict with that of the Commonwealth.'"  Cooper v. Commonwealth, 54 Va. App. 558, 562, 680 S.E.2d 361, 363 (2009) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)).

Great deference is given to the trier of fact, in this case the trial court.  Determining the credibility of the witnesses and the weight afforded their testimony are matters left to the fact finder, who has the ability to hear and see them as they testify.  E.g., Commonwealth v. Taylor, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998); Swanson v. Commonwealth, 8 Va. App. 376, 378-79, 382 S.E.2d 258, 259 (1989).  The fact finder is also responsible for determining "what inferences are to be drawn from proved facts," provided that the inferences reasonably flow from those facts.  Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (quoting Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567-68 (1976)).  "[W]hen 'faced with a record of historical facts that supports conflicting inferences,' . . . [the appellate court] 'must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  Harper v. Commonwealth, 49 Va. App. 517, 523, 642 S.E.2d 779, 782 (2007) (quoting Jackson v. Virginia, 443 U.S. 307, 326 (1979)).  "If the evidence is sufficient to support the conviction," the reviewing court will not "substitute its own judgment for that of the trier of fact, even if its opinion might differ from the conclusions reached by the [fact finder]."  Jordan v. Commonwealth, 286 Va. 153, 156-57, 747 S.E.2d 799, 800 (2013).

On appeal, appellant contends that the evidence was insufficient to prove criminal negligence, an element that must be proved to convict an individual of involuntary manslaughter, felonious child abuse or neglect involving the reckless endangerment of a child, and felonious child abuse involving serious injury to a child.

"To prove a defendant's criminal negligence in relation to an otherwise lawful act, the Commonwealth must show that the performance was so improper as to constitute negligence so gross and culpable as to indicate a callous disregard of human life." Noakes v. Commonwealth, 54 Va. App. 577, 586, 681 S.E.2d 48, 52 (2009) (*en banc*) (citing Beck v. Commonwealth, 216 Va. 1, 4, 216 S.E.2d 8, 10 (1975)).

> The word "gross" means "aggravated or increased negligence" while the word "culpable" means "deserving of blame or censure." "'Gross negligence' is culpable or criminal when accompanied by acts of commission or omission of a wanton and willful nature, showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable results of his acts."

Morris v. Commonwealth, 272 Va. 732, 739, 636 S.E.2d 436, 439-40 (2006) (internal citations omitted) (quoting Barrett v. Commonwealth, 268 Va. 170, 183, 597 S.E.2d 104, 111 (2004)). "Thus, the issue of the accused's mental state requires 'an examination not only of the act that created the risk, but also of the degree to which the accused was [or should have been] aware of the danger that resulted from the act.'" Shanklin v. Commonwealth, 53 Va. App. 683, 688, 674 S.E.2d 577, 580 (2009) (alteration in original) (quoting Bean-Brewer v. Commonwealth, 49 Va. App. 3, 11, 635 S.E.2d 680, 684 (2006) (internal quotation omitted)). In addition, "[t]he Commonwealth must show more than mere 'inattention and inadvertence;' the defendant's negligence must rise to the standard of 'gross negligence.'" Id. (citations omitted).

> In cases involving children, "[t]his reckless disregard standard can be 'shown by conduct that subjects a child to a substantial risk of serious injury, as well as to a risk of death, because exposure to either type of risk can endanger the child's life.'" Barnes v. Commonwealth, 47 Va. App. 105, 111, 622 S.E.2d 278, 281 (2005) (quoting Commonwealth v. Duncan, 267 Va. 377, 385, 593 S.E.2d 210, 215 (2004)). It is not only the nature of the act or omission that matters. The vulnerability of the victim plays an equally important role in the culpability calculus.

> A "course of conduct" that satisfies the ordinary care standard when directed toward an adult "might be gross, and even criminal, negligence toward children of tender years." Noakes, 54 Va. App. at 591, 681 S.E.2d at 55[.]

Whitfield v. Commonwealth, 57 Va. App. 396, 405, 702 S.E.2d 590, 594 (2010).

### I. Involuntary Manslaughter

Appellant was convicted of involuntary manslaughter of Brashawnta. While involuntary manslaughter is a Class 5 felony, it is not statutorily defined. See Code § 18.2-36. The Supreme Court has explained the elements of involuntary manslaughter as follows:

> The crime of common law involuntary manslaughter has two elements: (1) the accidental killing of a person, contrary to the intention of the parties; and (2) the death occurs in the defendant's prosecution of an unlawful but not felonious act, or in the defendant's improper performance of a lawful act. To constitute involuntary manslaughter, the "improper" performance of a lawful act must amount to an unlawful commission of that lawful act, manifesting criminal negligence.

Noakes, 54 Va. App. at 585, 681 S.E.2d at 51-52 (quoting West v. Dir., Dep't of Corr., 273 Va. 56, 63-64, 639 S.E.2d 190, 195 (2007) (internal citations omitted)).

Appellant contends on appeal that the evidence failed to establish that his performance of a lawful act, namely, buckling a fourteen-year-old child into a seat belt or ensuring that the child had buckled himself into a seat belt, was "done in a way so grossly negligent and culpable as to indicate an indifference to consequences or an absence of decent regard for human life." We disagree with appellant. Appellant views his failure to ensure that Brashawnta was properly restrained in a vacuum. Appellant's failure to ensure that the children were properly restrained must be viewed in light of all the circumstances preceding and surrounding the vehicle accident. When so viewed, the totality of the circumstances show beyond all reasonable doubt that appellant was guilty of more than "ordinary negligence."

Appellant was convicted of reckless driving in connection with the circumstances of the accident, and that conviction is not challenged on appeal. The oncoming truck driver noticed that appellant was driving too fast to be able to negotiate the approaching curve. Appellant traveled over one hundred feet back and forth across Route 5 before striking a telephone pole. Appellant's failure to control his vehicle demonstrated his recklessness, and the risk to human life inherent in his recklessness. "[W]hen motor vehicles are driven recklessly the killing of human beings is a natural and probable result to be anticipated."[4] Keech v. Commonwealth, 9 Va. App. 272, 276-77, 386 S.E.2d 813, 815 (1989) (citing Goodman v. Commonwealth, 153 Va. 943, 952, 151 S.E. 168, 171 (1930). See also Montano v. Commonwealth, 61 Va. App. 610, 615, 739 S.E.2d 241, 243 (2013) (reckless driving is inherently dangerous and presents substantial risk to life).

Appellant also drove while under the influence of marijuana. While the trial court found that the scientific uncertainty about the degree of impairment precluded a conviction for driving under the influence pursuant to Code § 18.2-266, the evidence demonstrated that appellant had ingested marijuana no more than ten hours before the collision. The evidence further proved that appellant would have had difficulty determining the van's distance from other objects, staying in his own traffic lane, and turning the wheel and braking in a timely manner. Impairment due to voluntary intoxication is relevant to a criminal negligence determination even if it does not rise to the level required for a driving under the influence conviction. Beck, 216 Va. at 4, 216 S.E.2d at 10 (decided under prior code section).

---

[4] Appellant and Sheree, the owner of the van, initially attempted to excuse the collision by complaining that the steering was not working properly. Their denial of this defense at trial most likely occurred because the defense's own mechanic found no problems with the van's steering. Even if there had been a problem with the van, appellant's decision to drive it with knowledge of the problem would have constituted reckless driving in and of itself. Kennedy v. Commonwealth, 1 Va. App. 469, 473, 339 S.E.2d 905, 908 (1986) (choice to operate vehicle with knowledge of steering defect is reckless driving).

Furthermore, it was appellant's responsibility to make sure that Brashawnta was properly restrained by safety devices or seat belts. Code § 46.2-1095 requires the driver of a vehicle to ensure that any child he transports is properly secured in a child restraint device of the type appropriate for the child's size and age. Although a violation of Code § 46.2-1095 does not constitute a felony and is not negligence *per se*, see Code § 46.2-1098, it is a factor to consider in determining whether appellant was criminally negligent. See Evans v. Evans, 280 Va. 76, 84, 695 S.E.2d 173, 177 (2010) (by enacting Code §§ 46.2-1095 and 46.2-1098, the General Assembly did not "eliminate common law causes of action [for negligence] arising from injuries sustained by a child in a motor vehicle accident").

There was sufficient evidence before the trial court to determine that appellant's failure to ensure that Brashawnta was securely restrained constituted "at least inexcusable carelessness," and "the voluntary, intentional violation or disregard of a known legal duty." See Pelloni v. Commonwealth, 65 Va. App. 733, 739, 781 S.E.2d 368, 371 (2016). Appellant was aware none of the children in the van wore a seat belt or proper restraint - a fact he admitted to responding police. Nevertheless, appellant did wear his own seat belt. These facts demonstrate that appellant possessed the "knowledge and consciousness" of risk that can establish reckless disregard. See Barrett, 268 Va. at 183, 597 S.E.2d at 111.

Appellant drove recklessly after recently ingesting marijuana with the knowledge that his minor passengers were not properly restrained by seat belts or appropriate devices. Therefore, based on the totality of the circumstances, the evidence was sufficient to support a finding of criminal negligence.

## II. Child Abuse or Neglect

Code § 18.2-371.1 provides, in pertinent part:

> A. Any parent, guardian, or other person responsible for the care of a child under the age of 18 who by willful act or omission or refusal to provide any necessary care for the child's health causes or permits serious injury to the life or health of such child is guilty of a Class 4 felony. . . .
>
> B. 1. Any parent, guardian, or other person responsible for the care of a child under the age of 18 whose willful act or willful omission in the care of such child was so gross, wanton, and culpable as to show a reckless disregard for human life is guilty of a Class 6 felony.

Appellant was indicted for the abuse and neglect of Shakira under Code § 18.2-371.1(A). Appellant was prosecuted for the abuse and neglect of Nyiema pursuant to Code § 18.2-371.1(B).

For the same reasons the evidence was sufficient to find appellant guilty of criminal negligence in the involuntary manslaughter of Brashawnta, we also find the evidence was sufficient to find appellant guilty of criminal negligence in the abuse or neglect of Nyiema and Shakira. He drove recklessly after recently ingesting marijuana with the knowledge that his minor passengers were not properly restrained by seat belts or appropriate devices.

In addition, due to the young ages of Nyiema and Shakira, it was appellant's responsibility to make sure that Nyiema and Shakira were properly restrained by safety devices of the type appropriate *for the child's size and age*. Code § 46.2-1095. The only child's car seat in the minivan after the crash was improperly secured and, because the harness was inoperable, could not have restrained three-month-old Shakira. The booster seat found at the crash scene was not a proper safety seat for three-year-old Nyiema, even assuming it was in the van and she was seated on it before the impact.

Further, there was testimony that appellant had picked up Shakira out of her car seat. Sheree told appellant to put the child back in the seat before the police saw him. Appellant callously responded, "F the police. This is my daughter." Appellant claims his actions were mere "inattention or inadvertence." However, these facts demonstrate that appellant possessed a disregard for the law and the "knowledge and consciousness" of risk that can establish reckless disregard. See Barrett, 268 Va. at 183, 597 S.E.2d at 111.

Conclusion

The totality of the evidence was sufficient for a reasonable factfinder to conclude that appellant was criminally negligent in driving recklessly after recently ingesting marijuana and failing to ensure the proper restraint of his passengers. Therefore, we affirm his convictions for involuntary manslaughter, felonious child abuse or neglect involving reckless endangerment of a child, and felonious child abuse involving serious injury to a child.

Affirmed.